# WHEELING.

MATHEWS *et al. v.* JARRETT *et al.*

Submitted June 26, 1882—Decided October 28, 1882.

1. A contract which a court of equity will specifically enforce must be certain as well as fair in its terms; and the certainty required has reference both to the description of the property and the estate to be conveyed. Uncertainty as to either, not capable of being removed by extrinsic evidence is fatal to any suit for a specific performance. (p 422.)

2. Extrinsic evidence in such case is only admissible to a very limited extent. It cannot be used to supply any defect or omission in the terms of the written contract; but is strictly confined, in cases where no fraud, mistake or other equitable incident of a like character is alleged, to the function of explanation, and of exhibiting the surrounding circumstances in the manner and only to the same extent that such evidence is permissible in the interpretation of all other written instruments. (p. 422.)

3. In a suit for the specific execution of a contract for the purchase of land, where neither the contract itself, nor the extrinsic proof of the surrounding circumstances, identifies or defines the tract or boundaries of the land, or refers to anything by which it may be identified with reasonable certainty, the court will not decree a specific performance, but will dismiss the bill. (p. 422.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Greenbrier, rendered on the 8th day of November, 1879, in a cause in said court then pending, wherein Allen Mathews and others were plaintiffs, and Joseph Jarrett and others were defendants, allowed upon the petition of said plaintiffs.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

The facts of the case are sufficiently stated in the opinion of the Court.

*Samuel Price, J. W. Davis* and *John A. Preston* for appellants.

*John W. Harris* for appellees cited the following authorities: 1 Greenl. Ev. § 558 note (1); 3 Com. 424; 5 Gilm. 113;

2 Story Eq. Juris. § 776; 14 Pet. 172; 1 Johns. Chy. 370; 21 Gratt. 475; 5 Otto 200; 1 Greenl. Ev. § 200; 2 Pat. & H. 616.

SNYDER, JUDGE, announced the opinion of the Court:

This suit was brought in the circuit court of Greenbrier county by Allen Mathews and Oliver Jarrett to enforce the specific performance of a contract for the purchase of ten acres of land, situate on the waters of Muddy creek in said county, and on which the plaintiff Mathews then resided. The bill was filed at the April rules, 1879, and avers, that the plaintiffs entered into a contract with the defendant, Joseph Jarrett, for the purchase of said land; that they paid him on said purchase forty-five dollars and twenty-five cents and, on the 27th day of March, 1871, received from him a title-bond and were put in possession at the same time; that on March 16, 1874, they paid thirty-nine dollars and seventy-five cents, and afterwards, also, the sum of fifty dollars; that they have been deprived of said title-bond and cannot say what the exact terms of the contract were; but they were to pay two hundred dollars for the land and were to have a number of years within which to pay it; and that said Jarrett was to convey the land to them when all the purchase money was paid; that the plaintiff, Mathews, built a house on said ten acres and otherwise improved it; that on December 20, 1876, the said Jarrett by fraud and misrepresentation obtained from the plaintiff, Mathews, the title-bond and gave him in lieu thereof an agreement which said plaintiff signed, being decived as to its contents by the defendants. Said agreement is made a part of the bill as exhibit "H"; that said Jarrett has sold and conveyed the farm, of which said ten acres was a part, to his son-in-law, and daughter, the defendants E. P. Hill and Mary F. Hill his wife; that soon after the conveyance to said Hills the defendant, Jarrett, informed the plaintiff, Mathews, that the Hills would carry out the contract with the plaintiffs for said ten acres of land; that since then they have paid said Hills in money and labor a large amount which they have unjustly claimed of them as rents; and that the defendants refuse to convey to them the said land although they have paid for the same in full and complied with each and every part of their contract.

The agreement filed with the bill as Exhibit "H" is as follows:

"Whereas, I received of Allen Mathews and Oliver Jarrett (both colored), on the 27th of March, 1871, forty-five dollars and twenty-five cents, *on conditions* that if they paid me one hundred and fifty-four dollars and seventy-five cents (in addition to the first amount) by the 1st day of December, 1871, they, Mathews and Oliver Jarrett, were to have *ten acres* of land on the west side of the branch on the Keeny place (where said Mathews now resides), but said Matthews and Oliver Jarrett having forfeited said contract by reason of not paying said amount at the time specified. I received thirty-nine dollars and seventy-five cents March the 16th, 1874, which amount I placed to the credit of said Mathews to be applied as payments on rents of said land, they, Mathews and O. Jarrett, having forfeited all rights as purchasers; but should the said Mathews come forward in a short time with the necessary amounts of cash, I will sell him the land in question, provided E. F. Hill, to whom I have lately made a conveyance of said land, agrees to the same.

"In witness whereof, we affix our hands and seals the 20th day of December, 1876.

"JOSEPH JARRETT,     [SEAL.]

his
"ALLEN ⋈ MATHEWS.    [SEAL.]
mark.

"Witness:   E. F. HILL."

All the defendants demurred generally to, and answered, the plaintiffs' bill. The defendant, Jarrett, in his answer, states, that on the 27th day of March, 1871, he entered into a contract in writing with the plaintiffs for the conditional sale to them of ten acres of his farm on Muddy creek, by the terms of which contract the plaintiffs then paid him forty-five dollars and twenty-five cents, and he bound himself to convey said land to them on condition that they paid by the 1st day of December, 1871, the further sum of one hundred and fifty-four dollars and seventy-five cents; that the plaintiffs were put in possession of the land, but never afterwards paid anything on said purchase; that plaintiffs having forfeited said contract by their failure to pay said one hundred and fifty-four dollars and seventy-five cents by December 1,

1871, the plaintiff, Oliver Jarrett, shortly thereafter left said land and never until the filing of the bill in this suit returned or set up any claim to it; that the plaintiff, Mathews, desiring to continue in the possession of the land, then agreed to occupy it as a tenant and pay rent for it, and on March 16, 1874, he paid this defendant thirty-nine dollars and seventy-five cents in work on account of rents, and that plaintiffs never paid him any other than the two sums aforesaid, and the rents and profits of said land, during the occupancy of the plaintiffs, amounted to more than both said sums; that by deed, dated October 16, 1876, he conveyed his farm including said ten acres, to the defendants, E. F. and Mary P. Hill; that said contract, Exhibit "H," was fully understood and freely executed by the plaintiff. Mathews, and he knew at the time that said land had been sold to defendants, Hill, from whom he subsequently rented the same; that he has not now and never had the title-bond after it was delivered to plaintiffs and he does not know where it is. He denies that he ever told said Mathews that the Hills would carry out said contract, or that said title-bond was obtained from said Mathews by fraud and misrepresentation, or otherwise.

The defendants, Hill, in their answer say, that they purchased the land in the bill mentioned for a valuable consideration without notice of any sale to the plaintiffs; and by deed, dated October 16, 1876, their co-defendant, Jarrett, and wife conveyed the same to them; that neither of the plaintiffs ever paid them anything in money or labor on account of said alleged purchase. The deed from Joseph Jarrett and wife to said Hills is exhibited as a part of their answer, and the consideration is stated in it to be four thousand five hundred dollars, to secure the payment of which an express lien is retained therein, and it was admitted to record in Greenbrier county on the 30th day of October, 1876.

The plaintiffs joined in the defendants' demurrer and replied generally to the answers. A number of depositions were taken, both on behalf of the plaintiffs and the defendants. These depositions are very contradictory, and some of them, either from the ignorance of the witnesses, or a wanton disregard of any obligation to give honest and unbiased testimony, are so utterly and manifestly unreliable as to make

them almost entirely worthless. It is, therefore, very difficult to determine with any degree of satisfaction what the actual facts are in the case. So far as I deem it necessary to give them, they are, as nearly as I can ascertain from the record, about as follows:

On the 27th day of March, 1871, the defendant, Joseph Jarrett, entered into a contract in writing with the plaintiffs, Allen Mathews and Oliver Jarrett, in which the said defendant, Jarrett, acknowledged the payment of forty-five dollars and twenty-five cents to him by the plaintiffs, and for which they were to be permitted to build a house or cabin on a certain ten acres of land, situate on the southwest side of the branch on the upper end of said Jarrett's farm on Muddy creek, known as the Keeny place, and to occupy and use said house and ten acres of land from the said 27th day of March, 1871, until the 1st day of December following, and if on or before the latter date the plaintiffs should pay to said Jarrett one hundred and fifty-four dollars and seventy-five cents in addition to said forty-five dollars and twenty-five cents, making in all two hundred dollars, then he bound himself to convey to them by deed with general warranty said ten acres of land, otherwise the contract to be void. This contract was signed by Joseph Jarrett and, perhaps, one or both the plaintiffs. The writing is lost, or suppressed, and is not in the record, but its contents are shown by the proof to be substantially as above given; that this writing was delivered to the plaintiffs and they were at once put in possession of the land and they built on it an indifferent log cabin with one room in it and raised a crop of corn on the land or part of it that year; that neither the contract nor the evidence shows that the precise boundaries of the ten acres were ever agreed upon or laid off by the parties; that the plaintiffs undertook a job of work for W. A. Anderson for which they were to receive one hundred dollars, and with this they intended to make a payment to Jarrett on said land; that before they got the money for this job, but subsequent to December 1, 1871, they showed their written contract to said Anderson and asked him if it would hold the land; that Anderson read it and told them it would not hold the land, that they had forfeited it; that then the plaintiff,

Mathews, said that if he could not hold the land, Jarrett should not have the one hundred dollars; that, after December 1871, the defendant, Joseph Jarrett, regarded and treated this contract as forfeited by its terms; that about this time the plaintiff, Oliver Jarrett, left the property and never after had any actual possession of it or paid anything further on it than his part of the said forty-five dollars and twenty-five cents; that after this the plaintiff, Mathews, continued to occupy his cabin with a garden and some patches of land which he cultivated; that the ten acres of land or a part of it was enclosed by said Mathews, but the land seems never to have been laid off by Joseph Jarrett or the boundaries fixed by the parties except in a general way—the land being a part of a farm known as the Keeny place; that on the 16th day of March, 1874, Mathews paid the defendant, Jarrett, in work thirty-nine dollars and seventy-five cents which he claims he paid on the purchase-money for the land, but Jarrett claims that it was paid and credited on the rents of the land according to an agreement made before that time between him and said Mathews; that it is evident that at the time this payment was made both Mathews and Joseph Jarrett regarded the contract of purchase as having been forfeited and inoperative; that these two sums the forty-five dollars and twenty-five cents and thirty-nine dollars and seventy-five cents was all that the plaintiffs or either of them ever paid said Jarrett on the land or the rent; that the rental value of said cabin, garden, &c., was about one dollar and fifty cents per month or eighteen dollars per year; that in October, 1874, said Jarrett sold his Keeny place, including the said ten acres, to the defendants, E. F. and Mary F. Hill; that of this sale Mathews was notified and continued to occupy the cabin under Hill and paid him on rents from that time until this suit was instituted, in all, about seventy dollars; that by deed dated October 16, 1876, said Jarrett conveyed said Keeny place to said E. F. and Mary F. Hill, his son-in-law and daughter; that after this on the 20th day of December, 1876, all the parties then, and for some time prior thereto, treating and regarding said original contract as forfeited, the said defendant, Jarrett, and the plaintiff, Mathews, in the presence of said E. F. Hill, entered into the agreement of

that date exhibited with the plaintiffs' bill and hereinbefore given; that said contract, "H," was read over to the plaintiff, Mathews, and he signed it willingly, but the plaintiff, Oliver Jarrett, was not then present nor did he have anything to do with it or with the land after he left in the winter of 1871, or the spring of 1872, as before stated; that there is no testimony as to the value of the ten acres of land or its rental value, except as to the house, garden, &c., which is proved to be about eighteen dollars per year; that at the time the Hills purchased the land from defendant, Jarrett, E. F. Hill knew all about the contract between said Jarrett andt he plaintiffs, but he as well as the plaintiff, Mathews, then regarded said contract as conditional and as having been forfeited, because after that time the fence around the part of the ten acres which had been enclosed was removed and said Mathews rented the cabin, garden, &c., from Hill and paid him rent for the same; that both the plaintiffs are negroes and neither of them can write or read writing, but the plaintiff, Mathews, is shrewd and has more business capacity than persons of his race generally.

These being the material facts, as eliminated from the testimony in the cause, the court by its final decree, entered on the 8th day of November, 1879, overruled the demurrer of the defendants to the bill, "and being of opinion that the plaintiffs are not entitled to the relief prayed for in the bill, it is adjudged, ordered and decreed that the said bill be dismissed," &c., with costs.

From this decree an appeal with *supersedeas* was allowed by this Court on the petition of the plaintiffs.

The appellants claim that the contract set up in the bill must be held to be an absolute and not a conditional sale; but if the latter, the attendant facts and surrounding circumstances are such as prove that the forfeiture intended by the condition is in fact a penalty and of that character which will be disregarded by a court of equity and the contract enforced. The rules and principles which govern courts of equity in the construction and enforcement of contracts of this nature are fully discussed and clearly defined by this Court in the cases of *Davis* v. *Demming,* 12 W. Va. 246; and *Lawrence* v. *DuBois,* 16 *Id.* 443.

While I have grave doubts whether the facts and circumstances taken in connection with the proof of the contract as shown by the evidence in this cause, would make out a case for relief under the principles announced in the cases above cited, in the view I take of the facts here, it is unnecessary to decide that question in this cause. Pomeroy on Contr. §§ 334 and 336 ; *Wells* v. *Smith,* 7 Paige 22.

It is an elementary principle that a contract which a court of equity will specifically enforce must be certain as well as fair in its terms ; and the certainty required has reference both to the description of the property and the estate to be conveyed. Uncertainty as to either, not capable of being removed by extrinsic evidence, is fatal to any suit for a specific performance. *Preston* v. *Preston,* 95 U. S. 200. Extrinsic evidence, however, is only admissible to a very limited extent and for purposes well defined and limited. It cannot be used to supply any defect or omission in the terms of the written contract ; it is strictly confined, in cases where no fraud, mistake or other equitable incident of a similar character is alleged, to the function of explanation, and of exhibiting the surrounding circumstances, in the same manner and only to the same extent that such evidence is permissible in the interpretation of all other written instruments. *Parkhurst* v. *Van Cortlandt,* 14 Johns. Chy. 15 ; *Reed* v. *Hornback,* 4 J. J. Marsh. 377 ; *Graham* v. *Hendren,* 5 Munf. 185 ; *Creigh* v. *Boggs,* 19 W. Va. 240. In the case last cited this Court decreed the specific execution of the contract with a parol variation, but this was done upon the express ground that both parties to the contract made an agreement to alter the lines of the original purchase, and this was alleged by plaintiffs and admitted by the defendant in his answer.

In the case under consideration, if it is conceded that a contract sufficiently certain in other respects, has been proven, and this is by no means free from doubt, the proof is too indefinite in reference to the identification and boundaries of the land intended to be sold to warrant a decree for specific execution. The description given in the contract as it appears to be proven is, that it is ten acres of land on the south side of the branch on the upper end of the defendant, Jarrett's,

Keeny place. The extrinsic evidence by which this description is intended to be made certain shows that said Keeny place contains over two hundred acres of land; and not a single witness attempts to state that the land could be identified from the general description given in the contract or that the boundaries were ever fixed by any agreement between the parties. Some of the witnesses do state that the plaintiff, Mathews, enclosed a certain parcel of land around his house, variously estimated from eight to twelve acres; but none of them state that this land so fenced or enclosed is the boundary sold by defendant Jarrett to the plaintiffs or that it can be identified as such from the description given in the contract. The plaintiff, Oliver Jarrett, says the land was not fenced off when he left there. The plaintiff, Mathews, says, that he built a house on it and that defendant, Jarrett, showed him where to lay the fence worm around it; but in another part of his deposition, in reply to the question, whether he ever had the boundaries of the land pointed out to him by defendant, Jarrett, he answers: "He showed me the place where he did not claim any farther. That he said was mine and the other his;" and in reply to another question of the same purport, he says: "Mr. Jarrett and Mr. Hill both came up there (to his house), and was going to run it off, but concluded they wouldn't." This as well as the other evidence shows that in fact the boundaries of the land were never definitely settled or agreed upon by the parties, and tends to prove that they did not at the time the original contract was drawn intend to do more than fix the general location of the ten acres in order that the plaintiffs might build a house on it and occupy or crop about that quantity of land, and that if the plaintiffs paid the balance of the purchase-money, then the boundaries of the land were to be fixed and run off and a deed made for it by Jarrett to the plaintiffs. In this uncertain and unsatisfactory condition of the contract and the evidence, the description and identification of the land is too vague and indefinite for a court of equity to attempt to decree a specific execution of the contract.

Upon a careful consideration, therefore, of the whole case, I am of opinion that there is no error in the decree of the

circuit court and that the same should be affirmed with costs to the appellees and thirty dollars damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.