# WHEELING.

### WESTFALL *v.* COTTRILLS.

Submitted September 11, 1884—Decided November 1, 1884.

1. In a suit for the specific execution of a parol contract for the purchase of land, where neither the contract nor proof identifies or defines the tract or boundaries of the land nor refers to anything, by which it may be identified with reasonable certainty, the court will not decree a specific performance but will dismiss the bill. (p. 766.)

2 A parol contract to sell and convey "forty acres off the Spring Fork end of my tract of one hundred and forty-seven acres on Beech Fork in Calhoun county" is too vague and indefinite to be specifically enforced. (p. 767.)

The facts of the case are stated in the opinion of the Court.

*J. G. Schilling* and *H. C. Flesher* for appellant.

No appearance for appellee.

JOHNSON, PRESIDENT:

In May, 1881, Thomas Westfall brought his suit in chancery in the circuit court of Calhoun county for the specific execution of a parol contract for the purchase of a tract of land. The bill alleges that "plaintiff had paid to said Cottrill ninety dollars and for the support of his own and Cottrill's family about four hundred dollars, and in consideration that he would let him have the ninety dollars, and contribute to the support of Cottrill's family he agreed to convey to the plaintiff forty acres of land out of a tract of about one hundred and forty-seven acres which he said Silas then owned in said county, situate on Beech Fork, the said forty acres to be run off of the Spring Fork end of said one hundred and forty-seven acre tract being the upper end thereof." The bill further alleged, that the plaintiff moved on to this land and has improved and occupied it from that time to this; that on the 12th day of February, 1881, said Silas had conveyed seventy acres of the one hundred and forty-seven acres, including said forty acres, to his son Anderson Cottrill; that

said Anderson before said conveyance had full notice of plaintiff's rights, &c.; and prays a specific execution of said contract, &c.

Silas Cottrill answered denying every material allegation of the bill. Anderson Cottrill also answered the bill.

Many depositions were taken and the witnesses, who spoke of the contract, agreed to having heard the defendant talk about it and that he said: "Westfall was to have forty acres off of the Spring Fork end of the one hundred and forty-seven acre tract."

The court upon a hearing decided that the contract ought to be specifically performed, and appointed the county surveyor to survey the land according to the contract, and the surveyor surveyed forty acres on the upper end of the tract of one hundred and forty-seven acres all on Beech Fork, and no part of it or a very small part if any of it on Spring Fork and certain enclosed land, which by the deposition of the plaintiff had been cleared and was in the possession of the defendant Silas Cottrill for more than ten years. This survey was excepted to on various grounds. The court permitted other testimony to be taken, when the plaintiff entirely changed his testimony, and evidently tried to make it conform to the survey. He said: "My understanding with Silas Cottrill was that the boundary was to commence on the left hand of Spring Fork at Cottrill's line, so as to include forty acres of land on the upper end of Silas Cottrill's tract." He had before deposed, that his father-in-law Silas Cottrill said: "He shall have forty-acres of land off of the Spring Fork end of my land lying on Beech Fork lying in Calhoun county, West Virginia." He further deposed: "He (Cottrill) told me to go to work and clear up ground and put in a crop which I *done*. After the crop was laid by he told me to go up *on the Spring Fork* and put me up a house on my own land, which I *done* and have lived there in *peaceable* possession up to the institution of this suit." As the survey shows, Beech Fork runs through the one hundred and forty-seven acre tract, and toward the upper end of the tract *Spring Fork* running through a part of the land runs into Beech Fork.

Solomon Hall's deposition was twice taken. On the first

occasion he said he "heard Silas Cottrill say he got some money of Westfall concerning a beast, and he didn't get the beast, but let the money go on the land that he had sold him or was going to let him have, and I don't remember of hearing anything said about the making of a deed to Westfall, *and I don't know anything more.*" When his deposition was last taken, when Westfall found it necessary to change his tactics, Hall deposed: "I had a conversation with Silas Cottrill as to the boundary of the land. Silas Cottrill showed me where Westfall's line was to run. He said it was to begin on the point on the left of the Spring Hollow; he said it was to run with the cross fence straight, and he pointed across Beech to the opposite hill and said that was the way it was to run to his other line, and said that would leave his land more in a square." He said this conversation took place four or five years after the war closed. He does not attempt to explain the discrepancy between these two depositions.

These are the only two depositions which pretend to claim that Cottrill ever designated any boundary for the land. I am free to say, that under the circumstances I do not believe a word they say on the subject. It is clear to my mind that this was an after-thought resulting from the supposed necessity of the case. Why he did not locate the boundaries so as to include the land he had improved and exclude that which Silas Cottrill had in possession I do not understand. For if he had been well informed, he would have understood, that before a court of equity will enforce a parol contract for the sale of land, it must appear that the purchaser had possession of what he claimed. The court confirmed the report of the surveyor and required Cottrill to make a deed for the land. Cottrill appealed.

By the decree entered June 28, 1882, the surveyor of the county was required to "survey and lay off to the plaintiff the forty acres of land in this bill mentioned, off of the Spring Fork end of the seventy acres and the one hundred and forty-seven acres." By the decree of October 28, 1882, the said surveyor was required to show on his plat the one hundred and forty-seven acres, the seventy acres and the forty acres, which he did, and shows the forty acres principally on Beech

Fork and only partly on Spring Fork. The other decree I have already noticed. What the surveyor had to guide him does not appear in the record, except that he says he was guided by the court's order and laid off forty acres off the Spring Fork end of the one hundred and forty-seven acres. Under that general direction he could have laid it off somewhere else as well as there. His directions were so vague and indefinite, that he could lay it off as he pleased off the upper end of the tract. But his directons were quite as definite as the contract set out in the bill.

It is well settled, that where a bill is filed for the specific performance of a parol contract, the contract must be set out with reasonable certainty and proved substantially as alleged, or no decree can be entered to enforce it; and the court may dismiss the bill if the contract is not proved as alleged. (*Baldenberg* v. *Warden*, 14 W. Va. 397.) This Court also held in *Mathews* v. *Jarrett*, 20 W. Va. 415, that a contract, which a court of equity will specifically enforce, must be certain as well as fair in its terms, and the certainty required has reference both to the description of the property and the estate to be conveyed. Uncertainty as to either, not capable of being removed by extrinsic evidence, is fatal to any suit for a specific performance. In that case the description was in a written contract as follows: "Ten acres of land on the west side of the branch on the Keeny place, where said Mathews now resides." The court held, that "in a suit for specific performance of a contract for the purchase of land, where neither the contract itself nor the extrinsic proof of the surrounding circumstances identifies or defines the tract or its boundaries, or refers to anything by which it may be identified with reasonable certainty, the court will not decree a specific performance but will dismiss the bill." In that cause the bill was dismissed by the court below and here affirmed.

That contract was more certain than the contract set up in the bill in this cause. Here the contract is not only indefinite as to the property alleged to have been purchased, but also as to the price to be paid. Without discussing the question, whether the part performance was proved, it is clear that the contract set up in the bill and attempted to be proved

is so vague and indefinite, that a court of equity cannot enforce it.

All the decrees entered are reversed with costs to the appellants; and the bill is dismissed at the costs of the plaintiff.

REVERSED.   DISMISSED.

24  767
35  251
36  735

24  767
49  592
49  687
49  690

24  767
51  300

# WHEELING.