𝕴𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

LITTERALL v. JACKSON & ALS.

JUNE 25TH, 1885.

1. SPECIFIC PERFORMANCE—*Requisites.*—The first requisite of a contract to entitle one to its specific performance in equity, is certainty and definiteness in its terms. *Wright* v. *Pucket*, 22 Gratt. 370.

2. IDEM—*Married women—Contracts—Lands.*—It is well settled that a court of equity will not decree against a wife performance of her contract to convey her lands; nor against wife or husband performance of his or their contract to convey her lands.

3. PERSONAL REPRESENTATIVE—*Powers.*—An administrator, as such, is without authority to make sale of his intestate's real estate.

4. JURISDICTION—*County courts.*—County courts possessed general jurisdiction concurrent with circuit courts until the enactment of sections 2 and 3 of chapter 124, Code 1873, except as to sale of lands of persons under disabilities.

Appeal from decree of circuit court of Wythe county, entered 11th December, 1883, in a cause wherein George W. Litterall, the appellant here, was complainant, and George W. Jackson and als. were defendants.

Opinion states the case.

*Robert Crockett*, for the appellant.

*James A. Walker*, *William Terry* and *Jos. W. Caldwell*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

This is a triangular contest in respect to the ownership of the land in controversy, it being so much of the 2058-acre survey granted by the commonwealth to D. B. Saunders, on the 1st day of February, 1851, as is east of the "Low-Gap" road in the county of Carroll. All of said 2058-acre survey is embraced within an older, larger survey, known as the Ruston survey, containing 240,000 acres, and, at the time of the grant for said 2058 acres, owned by the Wythe Union Lead Mines Company.

At the time of the emanation of the grant to D. B. Saunders for said 2058 acres, the Lead Mines Company had been and was engaged in serious litigation involving their title to said Ruston survey, and said company threatened to commence litigation with D. B. Saunders in respect to said 2058 acres. But, to prevent vexatious and expensive litigation, the Lead Mines Company entered into an agreement with said D. B. Saunders that in the event said company should, in the then pending litigation, establish their title to said "Ruston survey," then the said company should relinquish to said Saunders the said 2058 acres, embraced in said "Ruston survey," for the stipulated sum of $340, to be paid by said Saunders to said company. Said company did establish its title to said "Ruston survey," but D. B. Saunders died without having carried the agreement in respect to said 2058 acres into effect.

D. B. Saunders died intestate, leaving a widow and two children, to wit: Martha A., intermarried with S. G. Saunders, and Mary, who intermarried with E. T. Osborne; and said S. G. Saunders administered upon the estate of the decedent. After his qualification as administrator, S. G. Saunders, being advised of the understanding and agreement between the Lead Mines Company and his intestate (the said company agreeing to and acquiescing therein), executed his individual bond, with E. T. Osborne as surety, to said Lead Mines Company, or its authorized agents, for the sum of $340; which bond was dated the 11th day of June, 1866, and was made payable one day

after date, with interest. It is conceded that the only object in giving this bond was to complete the contract or agreement between said Lead Mines Company and D. B. Saunders, in the lifetime of the latter, and thus to secure to the heirs at law and distributees of said D. B. Saunders a clear and undisputed title to said 2058 acres granted as aforesaid to said Saunders, but included in the long prior "Ruston survey" owned by said Lead Mines Company.

On the same day on which S. G. Saunders completed said contract of his intestate as to said 2058 acres, said Lead Mines Company, by its attorney in fact, Joseph J. Graham, conveyed said 2058-acre survey to Martha A. Saunders and Mary S. Osborne, the heirs at law of said D. B. Saunders, the deed reserving a lien for the purchase money.

On the 25th day of April, 1866, after the appointment and qualification as administrator of D. B. Saunders, but before his completion of the said contract with the Lead Mines Company, S. G. Saunders, as administrator of D. B. Saunders, executed and delivered to Lewis Litterall, Jr., the following paper:

"I have, as administrator of D. B. Saunders, deceased, this day bargained and sold to said Lewis Litterall, Jr., all that part of a tract of land belonging to the said D. B. Saunders, now occupied by Robert Porter, in Carroll county, and lying east of the Low-Gap road, for the gross sum of one hundred dollars; thirty dollars paid down, and the balance when a deed is made. The said Litterall accepts Robert Porter as his tenant. Said Litterall is to pay taxes on the land from this date. Also a quantity of land lying west of the Low-Gap, and on the Yellow branch, between *Loyd* James and Lewis' land, at fifty cents per acre. Said Litterall is      to as much as 200 acres at that price; but     said Litterall has this day paid ten dollars on    , and is to have until 25th December, 1866, to determine how     will takes it, which time he will pay for what *the* takes. Witness my hand and     25th day of April, 1866."

This paper was signed by S. G. Saunders as administrator.

For the specific execution of this contract, the appellant, Geo. W. Litterall, filed his bill in the circuit court of Carroll county in June, 1881. Whether said contract is a proper one for specific execution by a court of equity, is the first question to be determined by this court. But, before entering upon that enquiry, it is necessary to call attention (1) to how the appellant claims the right to enforce this contract in his favor; and (2) to the chancery suit of Saunders _v._ Saunders, commenced in the county court of Wythe county, in 1870, and finally moved to and determined in the circuit court of said county.

First, then, as to the claim of the appellant, Geo. W. Litterall. Lewis Litterall, Jr., with whom said Saunders as administrator made said contract, or rather the paper purporting to be a contract, after taking and holding possession thereunder, of the land in controversy, and holding same for a considerable time, removed to one of the western states, where, in the year      , he died intestate, unmarried and childless; and whatever claim he had, passed by inheritance to his father, Lewis Litterall, Sr., who lived in the neighborhood of this land, in the county of Carroll. Lewis Litterall, Sr., in 1873, in professed obedience to a request to that end made by Lewis Litterall, Jr., before he left Virginia, conveyed the land to his son, Clark Litterall, who, by deed of date May 12th, 1876, for the consideration therein named, conveyed the same to the appellant, Geo. W. Litterall, who claims the right to have the same specifically executed. Prior to the conveyance from Lewis Litterall, Sr., to Clark Litterall, and from the latter to the appellant, to-wit, on the 18th day of May, 1870, said S. G. Saunders and Martha A., his wife, who was one of the heirs at law of D. B. Saunders, filed their bill in the county court of Wythe county, against Jane Saunders, the widow of D. B. Saunders, and E. T. Osborne and Mary, his wife, the latter being the other child and heir at law of D. B. Saunders. The bill set forth the death of D. B. Saunders, and the administration upon his estate by said S.

G. Saunders; and alleged that the personal estate of the deceased was inadequate to discharge the indebtedness of the estate; that the intestate died seized and possessed of several tracts or parcels of land, among them the said tract of 2058 acres; that it would be necessary to sell the land and pay the debts in order to a just and fair distribution of any residuum between the heirs at law and distributees; and that the widow and all parties in interest acquiesced in the object of the suit as set forth in the bill. And the bill in furtherance of the objects in view, asked for a settlement of the administration accounts of said S. G. Saunders.

Jane Saunders, the widow, and E. T. Osborne and Mary, his wife, jointly and separately answered the bill, admitting as true the statements therein contained, and the necessity of the sale of the lands for the payment of debts and for a fair distribution of the residue. Such proceedings were had in this suit of Saunders *v.* Saunders, that on the 17th day of March, 1870, a decree was entered therein, among other things, enumerating the several tracts of land of which D. B. Saunders died seized, declaring the necessity of a sale of the several tracts of land, (among them the 2058 acres), and directing its special commissioner, Wm. Terry, to make sale of *all* of said lands and to report to court. There is in this decree no reservation or exception from the sale ordered of any portion of the 2058-acre tract. In obedience to said decree, said commissioner, on the 13th day of June, 1870, made sale of the lands, and the appellee, Jackson, became the purchaser of the 2058-acre tract, at $455, which was reported to court, the commissioner saying in his report, in connection with this tract: "There being an estimate there was a good title for only some twelve or fourteen hundred acres in said tract, by reason of prior sales," etc. This is the first intimation from any source, of any adverse claim, by any one, to any portion of the 2058-acre tract. Commissioner Terry's report of sales, on being returned, was confirmed by a decree rendered on the 11th day of October, 1870,

except as to the sale of the 2058-acre tract, which the court reserved for further consideration. In this attitude of the suit of Saunders *v.* Saunders, Geo. Jackson, the purchaser of the 2058-acre tract, and the appellee here, filed his cross-bill therein, setting forth the agreement between the Lead Mines Company and D. B. Saunders, in the lifetime of the latter; the death of said Saunders before that agreement was carried into effect; the execution of said bond by S. G. Saunders and L. T. Osborne to complete the agreement and quiet the title to said land; the conveyance of same by said company to the heirs of D. B. Saunders, with reservation of a lien for the purchase money; that he had become the transferee and owner of the bond for said purchase money, executed by said Saunders and Osborne to said Lead Mines Company or its agents, and claimed to set off the same, with the interest accrued thereon, against his purchase money price at which he bought said land at the sale made by Commissioner Terry; that he had paid to said commissioner a sum named, which together with said bond executed by Saunders and Osborne, as aforesaid, was equal to the purchase price at which he bought said 2058-acre tract, and insisted that he was entitled to a deed for same. To this cross-bill the widow and heirs of D. B. Saunders were made parties defendant, including the said S. G. Saunders and E. T. Osborne, the husbands of said two daughters and heirs at law.

Said defendants filed their joint and several answers, admitting the general statements of the cross-bill, and submitting to the court whether Geo. Jackson was entitled to a deed for said 2058-acre tract of land, by reason of his having discharged to the Lead Mines Company said incumbrance, and whether he was entitled to a credit for the full amount of the said note, principal and interest, against the amount of his purchase money for said tract of land.

On the 19th of November, 1870, the cause was again heard upon the papers formerly read, the cross-bill and the answers of the defendants thereto, when a decree was pronounced ascer-

taining that the amount of the note executed by S. G. Saunders
and E. T. Osborne, with the interest thereon, which had been
paid off and discharged by Geo. Jackson, constituted a valid
incumbrance on said land, and that said Jackson was to that
extent entitled to an offset against his purchase money, and that
with the amount thereof the said Jackson had paid to said com-
missioner an amount equal to his purchase money for said land;
and said decree confirmed to said Jackson his purchase of said
2058-acre tract, and appointed Wm. Terry a special commis-
sioner for the purpose, and directed him to make a deed for
same, "with proper reservation of the rights of purchasers of
portions of said tract." In conformity to said decree, Commis-
sioner Terry, by deed dated 5th day of December, 1870, con-
veyed said land to Geo. Jackson, the deed describing same as
"containing 2058 acres, more or less, being the same land that
was patented by the commonwealth of Virginia to D. B. Saun-
ders, by patent bearing date 1st day of February, 1851;" the
deed further reciting: "But it is understood, there are within
the boundaries called for by said patent some eight hundred
acres, more or less, in sundry small tracts or parcels, sold and
conveyed by said D. B. Saunders in his lifetime, which are not
intended to be embraced in this conveyance, but only such in-
terest as said Saunders died seized and possessed of." Thus
arose the claim of the appellee, Jackson, to the land in con-
troversy.

Later, to-wit: in April, 1881, in an action of ejectment,
brought in the circuit court of Carroll county, by the appellee,
Jackson, against the appellant, Geo. W. Litterall, a judgment
was recovered by said Jackson against said Litterall for the land
in controversy. Thereupon, said Litterall filed his bill in the
circuit court of Carroll county, against said Geo. Jackson, S. G.
Saunders, in his own right, and as administrator of D. B. Saun-
ders, dec'd, and Martha Saunders his wife, E. T. Osborne, and
Mary his wife, and E. Marshall, sheriff of Carroll county; and
after setting out substantially the facts hereinbefore narrated in

connection with said 2058-acre survey, the sale of that portion thereof in controversy by the administrator of D. B. Saunders to Lewis Litterall, Jr., the death of said Lewis Litterall, and inheritance from him by Lewis Litterall, Sr., the father, and the conveyance by him to Clark Litterall, and by the latter to Geo. W. Litterall, prays for a specific execution of said alleged contract, hereinbefore set out, and for a restraining order, which was granted, enjoining the said Jackson and others from the enforcement of the judgment in said action of ejectment until the further order of the court.

Geo. Jackson answered this bill of Geo. W. Litterall, utterly denying the claim set forth therein; denied that he only purchased the land west of the "Low-Gap road," as alleged; and says that he purchased under the decree of the county court of Wythe, in the suit of Saunders *v.* Saunders, as shown by his deed from Commissioner Terry, *all* the interest of D. B. Saunders' estate in the 2058-acre tract; and that he made said purchase, paid the purchase money, and obtained his deed, without any notice whatever of the claim of Geo. W. Litterall, or any notice of the alleged contract under which said Litterall asserts his claim. And the said respondent in his answer denies that S. G. Saunders had any interest in or authority to sell the land in controversy; and insists that the alleged contract, relied on by complainant, is utterly void and worthless, as regards the respondent, not only because made without authority, but because never recorded, and because respondent had no notice thereof when he purchased. Respondent also denies that D. B. Saunders, in his lifetime, ever sold any portion of the 2058-acre tract, and says the whole of it descended to his heirs, subject only to the lien of the Lead Mines Company. There are numerous other denials in respondent's answer of statements in appellant's bill, which need not be referred to here. Such is the claim asserted by the heirs of D. B. Saunders.

S. G. Saunders and wife, and E. T. Osborne and wife, also answered, jointly and severally, the said bill of Geo. W. Litter-

all, and in resistance of this claim of Litterall, rely upon the facts and statements contained in the answer of Geo. Jackson: but, departing therefrom, allege that at the sale by Wm. Terry, commissioner, of the 2058-acre tract, which was purchased by Geo. Jackson, there was an express reservation or exception of the land in controversy; deny the validity of the contract under which Geo. W. Litterall claims, and insists that the land in controversy belongs to the heirs of D. B. Saunders, subject to the debts of the decedent. These parties then supplement their answer by a cross-bill in which, after a lengthy rehearsal of the facts hereinbefore set out, directly assail as null and void all the proceedings in said suit of Saunders *v.* Saunders, including the decree therein, under which the 2058-acre tract, including the land in controversy, was sold, on the ground that said county court had no jurisdiction to sell the land of *femes covert*, as in this case.

In the meantime the cause was removed to the circuit court of Wythe county, wherein a decree was pronounced on the 11th day of December, 1883, overruling the demurrer to the cross-bill of Geo. Jackson, and dismissing the bill of the complainant, Litterall, and the cross-bill of Saunders and others. From that decree the case is here on appeal.

In the first place, as touching the claim of the appellant to be entitled to specific execution of the contract relied on, the enquiry is, whether the contract is one, the specific performance of which can be enforced by a court of equity. If we look to the contract as a whole, so far from coming up to the requisites of definiteness and certainty in all its terms, it is obscure, and, in some important respects, senseless. It first sets forth with tolerable certainty a sale of that portion of the 2058-acre tract east of the "Low-Gap" road at the gross sum of $100, the receipt of $30 of which is acknowledged, and the remainder to be paid when the deed is made. Then comes a vague and, in fact, unintelligible intimation of the sale thereby of some additional quantity of land lying west of the "Low Gap,"—not the

"Low-Gap road." Whether this, whatever its quantity or locality, is adjoining to that part described as east of the "Low-Gap road," or is a part of the 2058-acre survey, or part of the land in controversy, it is impossible to determine by looking to the terms of the contract, or by reference to anything shown satisfactorily by the record. If we confine our scrutiny to the first part of the contract which more definitely applies to that part east of the "Low-Gap road," and treat it as the land in controversy, then we are confronted with the clear preponderance of testimony to the effect that the contract (such as it is) was obtained by the false and fraudulent misrepresentations of the vendee as to the quantity of land, of which the supposed vendor had no knowledge, and relied upon the statements of the vendee, who had information upon the subject, and represented the boundary to contain about 100, or at the utmost, 125 acres, when by actual survey it contained 458 acres, discovering which, the vendor refused to convey, and did not receive the balance of the purchase money, and that in fact, the contract was forfeited, and in effect, abandoned under a stipulation under-written, at the time on the same piece of paper, it appearing that said stipulation has been torn from the contract, and does not appear with the contract as exhibited with the complainant's bill. In no view does the alleged contract, whether looked at by itself or in the light of surrounding circumstances, as disclosed by the testimony of witnesses, come up to the standard which is necessary to its capability of specific execution. See *Pigg* v. *Corder*, 12 Leigh, 69; *Graham* v. *Call*, 5 Munf. 396; *Wright* v. *Puckett*, 22 Gratt. 374.

But over and above all this, the supposed vendor had no interest in the subject at the time, nor any right to make the alleged sale. The contract, on its face, purports to be a sale by S. G. Saunders, administrator of D. B. Saunders; the language of the instrument being: "I have, as administrator of D. B. Saunders, deceased, this day bargained and sold to said Lewis Litterall, Jr., all that part of a tract of land belonging to said

D. B. Saunders"; and he signs his name as "administrator of D. B. Saunders."

It cannot be necessary at this day to cite authorities for the proposition that an administrator cannot sell the land of his intestate. At the time of the contract the Lead Mines Company had not released their superior title to the heirs of D. B. Saunders, nor had S. G. Saunders completed the contract with said company agreed upon by it and D. B. Saunders in his lifetime, and whatever interest D. B. Saunders had therein had passed by descent to his heirs at law, who were married women. The well settled law is, that a court of equity has no power to decree either against a wife performance of her contract to convey her land, or against either the wife or the husband the performance of his or their contract to convey the wife's land. See *Watts* v. *Kenny*, 3 Leigh, 272; *Clark* v. *Raines*, 12 Gratt. 98. We are, therefore, of opinion, that the court did not err in overruling the demurrer to the appellee's cross-bill, and in dismissing the bill of the appellant.

2d. Did the court below err in dismissing the cross-bill of Saunders and others? We think not. It is insisted, however, that the county court was without jurisdiction, and that all the proceedings in the case of Saunders *v.* Saunders, wherein the land in controversy was decreed to be sold and was sold to pay the intestate's debts, and for the distribution of the residue among those entitled thereto; and this was acquiesced in by all parties concerned. It is true that mere consent cannot confer jurisdiction, where it does not exist; but in this and like cases the county court then had jurisdiction; in fact, the county court was a court of general and concurrent jurisdiction with the circuit court, except in respect to suits for the sale or partition of the lands of infants, or for the sale of the lands of insane persons, as to which the law gave exclusive jurisdiction to the circuit courts. See 1 R. C. p. 409, § 16; p. 417, ch. 109, § 22; Code 1873, ch. 124, §§ 2 and 3.

The law in force when the proceedings in Saunders *v.* Saun-

ders were had, is found in § 16 of ch. 157, Code 1860; also, in 1. R. C. p. 249, ch. 71, § 7; and reads: "The court of a county or corporation shall have jurisdiction to hear and determine all cases at law or in chancery within such county or corporation which are now pending, or may hereafter be brought in said court," except certain cases therein enumerated, the suit in question not being among the cases excepted.

The suit in question was simply a suit to sell lands of a decedent, brought, not by an administrator, but by some of the heirs at law against the widow and other distributees, to pay the debts of the estate and for distribution, in which all parties in interest acquiesced. Clearly the county court had jurisdiction; and the court below did not therefore err in dismissing the cross-bill of Saunders and others. This statute was repealed by the subsequent act limiting the jurisdiction of county courts, but the repeal was subsequent to the proceedings in said suit had in the county court.

There is no error in the decree appealed from, and the same must be affirmed, with costs to the appellees.

DECREE AFFIRMED.