# CHARLESTON

CRAWFORD *et al* v. WORKMAN.

Submitted February 19, 1908.    Decided March 3, 1908.

1. SPECIFIC PERFORMANCE—*Contract.*

   A contract which a court of equity will specifically enforce must be certain as well as fair in its terms; and the certainty required has reference both to the description of the property and the estate to be conveyed. Uncertainty as to either, not capable of being removed by extrinsic evidence is fatal to any suit for a specific performance.    (p. 12.)

2. EVIDENCE—*Parol Evidence—Admissibility.*

   Extrinsic evidence in such case is only admissible to a very limited extent. It cannot be used to supply any defect or omission in the terms of the written contract: but is strictly confined, in cases where no fraud, mistake or other equitable incident of a like character is alleged, to the function of explanation, and of exhibiting the surrounding circumstances in the manner and only to the same extent that such evidence is permissible in the interpretation of all other written instruments.    (p. 12.)

3. SPECIFIC PERFORMANCE—*Dismissal of Suit—Indefinite Contract.*

   In a suit for the specific execution of a contract for the purchase of land, where neither the contract itself, nor the extrinsic proof

of the surrounding circumstances, identifies or defines the tract or boundaries of the land, or refers to anything by which it may be identified with reasonable certainty, the court will not decree a specific performance, but will dismiss the bill.  (p. 12.)

4.  SAME—*Laches.*
     Where a vendee of land delays suit for specific performance for an unreasonable time, and there has come a great increase in the value of the real estate sold, so that enforcement of the contract would impose hardship and loss upon the vendor, equity as a general rule, will not enforce the contract.  (p. 16 )

Appeal from Circuit Court, Boone County.

Bill by E. T. Crawford and W. L. Ashby against Allen Workman.  Decree for plaintiffs, and defendant appeals.
                         *Reversed.   Bill Dismissed.*

FRANK P. MURPHY, GEO. M. McDERMIT, and W. E. R. BYRNE, for appellant.

BROWN, JACKSON & KNIGHT, and LEFTWICH & BYRNSIDE, for appellees.

BRANNON, JUDGE:

E. T. Crawford and W. L. Ashby sued Allen Workman in the circuit court of Boone county to compel Workman to make them a deed for minerals in a tract of land.  The defendant demurred to the bill and answered, and the court decreed a specific performance, and Workman has brought the case to this Court.

Upon the question whether Workman in fact made the contract sued upon there is great conflict of evidence; but we shall say that Workman did make the contract.  That contract is that " in consideration of $2.00 for coal, oil, gas and other minerals, with rights of way and timber for mining purposes, the party of the first part agree to sell and convey unto the party of the second part, or to whosoever he may designate the above interests in the following described tract or boundary of land containing 600 acres, more or less, situate in Crook district, Boone county, West Virginia, described as follows, to-wit: On the West Fork of Little Coal River, and James Creek of said West Fork; upon the following terms that is to say:" The statute of frauds requires a contract for the sale of of the land to be in writing.

That writing must have legal certainty. It must speak the contract, because that statute says that the contract shall be in writing. All its essentials shall be in that writing. That is the very object of the statute. Does this contract possess legal certainty? We think it does not. "The first requisite of a contract to entitle one to specific performance in equity, is certainty and definiteness in its terms." *Litterall* v. *Jackson*, 80 Va. 604. "A contract which a court of equity will specifically enforce must be certain as well as fair in its terms; and the certainty required has reference both to the description of the property and the estate to be conveyed. Uncertainty as to either, not capable of being removed by extrinsic evidence, is fatal to any suit for a specific performance." *Mathews* v. *Jarrett*, 20 W. Va. 415, pt. 1. Innumerable authorities state that proposition. Hogg's Eq. Princ., section 397. I assume that nobody will say that the contract above quoted, in and of itself, identifies the land. In what part of Crook District, which may be large in area, does this land lie? What particular land on the West Fork of Little Coal river and James Creek out of the thousands of acres there lying? What part is on the West Fork and what part on James creek? Does it lie at the mouths or at the heads of those streams? Is there any surveyor to be found who could go on those streams and pick out this land from the lantern of this contract? No corners, no lines, no indexes to specify or guide. It is true that, under circumstances, proper evidence outside the contract may be called for help. *Mathews* v. *Jarrett*, *supra*, the second and third points of the syllabus are as follows: "Extrinsic evidence in such case is only admissible to a very limited extent. It cannot be used to supply any defect or omission in the terms of the written contract; but is strictly confined, in cases where no fraud, mistake or other equitable incident of a like character is alleged, to the function of explanation, and of exhibiting the surrounding circumstances in the manner and only to the same extent that such evidence is permissible in the interpretation of all other written instruments.

In a suit for the specific execution of a contract for the purchase of land, where neither the contract itself, nor the extrinsic proof of the surrounding circumstances, identifies

or defines the tract or boundaries of the land, or refers to anything by which it may be identified with reasonable certainty, the court will not decree a specific performance, but will dismiss the bill.'' So, we see that you cannot introduce any and all kinds of evidence. You cannot make a contract by oral evidence. You cannot put into the contract by oral evidence a most material element which the statute of frauds designs to be in writing. The trouble in this case is, that the contract itself neither specifies the particular land nor does it refer to any thing out side the contract by which to identify the land. It contains no such pointers. It does state the district and the streams, but where in that district or on these streams? It is lame because it contains nothing to point out that land, or point out something by which it may be made certain. We find in 6 Pomeroy's Eq. section 766, this statement of the law: '' However, it is not required that the written contract itself should furnish the sole evidence of such certainty and definiteness, where it is complete in its material terms, and there is sufficient certainty and definiteness for the court to supply either by proper reference to other documents, or properly admissible parol evidence as to extrinsic facts, the necessary degree of exactness. But parol evidence can never be given to supply an omitted term or make definite and certain that which the parties left indefinite and uncertain; in a word, parol evidence cannot show the intent of the parties if it cannot be found in the contract. Parol evidence can only be used to 'fit the description to the land.' '' We find in 2 Beach on Modern Equity, section 583, this statement of the law: '' The subject-matter of the contract must be described in such a way that it can be ascertained with certainty. The description must be so definite that it may be known precisely what the defendant imagined himself to be contracting for, 'and that the court may be able to ascertain what it is. It is not essential that the descriptions have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject-matter. The terms may be abstract and of a general nature, but they must be sufficient to fit and comprehend the property which is the subject of the transaction, so that, with the assistance of

external evidence, the description, without being contradicted or added to, can be connected with and applied to the very property intended, and to the exclusion of all other property. * * * * But while parol evidence may, and indeed must, be resorted to to apply the description to the specific piece of land supposed to be intended, yet the writing must be a guide to find the land; it must contain sufficient particulars to point out and distinguish the particular piece from any other. For example, a description in an agreement to convey as 'five acres, lot 3, section 23,' there being nothing to show what five acres was intended, has been held to be insufficient." Pomeroy on Specific Perform., in section 161, distinctly says that where the contract is vague it can be made certain, "by means of reference by itself or by other portions of the agreement." This shows that in the contract itself you must find the index pointing to facts to be shown by the extrinsic oral evidence. That section further says, "Parol evidence, however, is only admissible to a very limited extent, and for purposes well defined and limited. It cannot be used to supply any gap or omission in the terms of a written contract; it is strictly confined, in cases where no fraud, mistake, or other equitable incident of a similar character is alleged, to the function of explanation, and of exhibiting the surrounding circumstances, as is permissible in the interpretation of all written instruments. (3)" In a note there found is cited the case of *Parkhurst* v. *Cortlandt*, 1 Johns. Chy. 273, a decision by the eminent Chancellor Kent, which says that "Unless the essential terms of the bargain and sale can be ascertained from the writing itself, or by a reference contained in it to something else, the writing is not a compliance with the statute." In *Reed's Heirs* v. *Hornback*, 4 J. J. Marshall 375, we find the proper rule stated as follows: "*Specific* execution of contract will *not* be enforced, unless parties have described and identified the particular tract of land which is to pass, or unless the contract furnish the means of identifying with certainty the land to be conveyed." In 20 Cyc. 270, we find this statement of the law: "The subject-matter of a contract falling within the statute of frauds must be so described in the memorandum as to be capable of certain identification. If, however, the description contained in the memorandum

points to specific property, parol evidence is admissible to identify that property, the rule being that that is certain which is capable of being made certain. In general the description of the land in a memorandum of a contract for sale of lands must be sufficiently definite to identify the land by its own terms or by reference in it to external standards in existence at the time of the making of the contract and capable of being determined beyond dispute." In 26 Am. & Eng. Ency. L. (2nd ed.) 130, we read: "But where the reference to the land to be sold is so vague and uncertain that a description will have to be supplied, such uncertainty cannot be cured by parol testimony." *Ferguson* v. *Staver*, 33 Pa. St. 411, says that: "To take a contract for the sale of land out of the Statute of Frauds, it is necessary that it should contain a description of the land sold. If the subject-matter be described, parol evidence is admissible to *apply* the description to the land; but it cannot be admitted, first, to describe the land sold, and then to apply the description." So held in the same words in *Baldwin* v. *Kerlin*, 46 Ind. 426. In connection with this authority I repeat that this contract is lame in the fact that it does not itself identify the land, it does not point to "specific property," and does not identify it by its own terms or by reference to external standards or tests of identification. Our own cases would forbid specific execution of this contract, because of its uncertainty. See 12 Encyclopedic Digest 491 to 495. In *Ensminger* v. *Peterson*, 53 W. Va. 324, we held void a contract selling "a tract of land *** situate on the south side of the South Fork near Owen Talkington." That is as good a description as this is. So in *Blankenship* v. *Spencer*, 31 W. Va. 510, and *Mathews* v. *Jarrett*, 20 *Id*. 514. "Ten acres of land on the West side of the Branch on the Kenny place, where Mathews now resides." So in *Westfall* v. *Cottrill*, 24 W. Va. 763: "Forty acres off the Spring Fork end of my tract of 147 acres on Beech Fork in Calhoun county." In *Webb* v. *Ritter*, 60 W. Va. 197, we held a deed void for uncertainty in the following description: "All that certain tract or parcel of land situate in McDowell county, West Virginia, on Ring's Branch, Peggy's Fork and Laurel Creek, all tributaries of the Dry Fork of Tug river, supposed by estimation to contain one hundred acres be the same more or less."

I have stated how far oral evidence is admissible. There is none in this case to help out the agreement, except that Workman as a witness, while denying the execution of the contract, stated that Ashby wanted to buy his minerals, and stated that they were in a tract conveyed to him by a certain deed; but the contract does not refer to that deed. The trouble is in the written contract itself.

✓ The insufficiency of the contract forbids its enforcement; but there is another reason which forbids specific execution. No possession was taken under the contract. The plaintiffs waited five years before suing. In the meantime the price of mineral land vastly increased, perhaps twenty fold, in that section, because coal lands became vastly valuable, and railroads were piercing into that section, one only a few miles from this land, and another pointing up West Fork, and we know that that section contains valuable coal deposits. At the time when this suit was brought, March, 1906, this land had become of great value for minerals. Why did the plaintiff delay suit for five years? May we not say that it was with the intent to await events, and if railroads should head in that direction they would insist upon the contract, otherwise not? "Where the delay of the vendor or vendee in seeking performance is for speculative purpose, to await until time shall determine whether or not it is to his advantage to have the benefit of the contract, it is held by a considerable group of cases that equity will not aid him by any relief against his failure to perform, whatever the situation otherwise." 6 Pomeroy's Eq., section 814. Pomeroy on Specific Performance, section 407, says that where a vendee delays in order that he may speculate upon the chances of its proving to be an advantageous bargain, or that through a rise in value his gain may be assured, and then when he is thus certain that it will be a fortunate speculation, sues for a conveyance, equity may refuse to grant him relief. There is another reason against relief, even if the delay is not to be ascribed to an intent of speculation. That reason is, that there was a great growth of value in minerals in that section of country. How great a growth we cannot say; but it was very large, lands once almost worthless became of great value. Railroads were built into that section piercing the country more and more as time progressed, and the en-

forcement of the contract would be a great hardship on Workman, because by it he would lose thousands of dollars. Now, I do not say that that hardship alone would refuse enforcement of the contract, but taken in connection with a delay of five years, we think that a court of equity should exercise its discretion. We have plenty of cases saying that the remedy of specific performance is not a matter of absolute right, *ex debito justitiae.* It lies not in the arbitrary, but sound, discretion of the court. So far back as *Anthony* v. *Leftwich,* 3 Rand. 238, Annotated, this principle was asserted. The West Virginia cases constantly assert it as a matter of sound discretion. *Lowry* v. *Buffington,* 6 W. Va. 249; *W. Va. O. O. L. Co.* v. *Vinal,* 14 *Id.* 637, pt. 7. This being so the fact that five years elapsed before suit, and the value of the minerals increased over and over and over again, so that to take them from Workman would cause him great loss, fairly called for refusal of relief. *Darling* v. *Cummings,* 92 Va. 521, (23 S. E. 880,) holds that, "If there has been a change of circumstances or relations, which renders the execution of the contract a hardship to the defendant, and especially if there has been a great change in value, and it is accompanied by an unexcused delay on the part of the complainant, the change and delay *together* will constitute a sufficient ground for denying specific performance when sought by one in default." We stated this doctrine in *Urpman* v. *Lowther Oil Company,* on pages 509 and 510 in 53 W. Va., citing authority, which it is needless to recite here. See *Galliher* v. *Cadwell,* 145 U. S. 368. See many cases cited in 12 Encyclopedic Digest 574-5. "Where the circumstances have changed. The delay of the plaintiff will always be a bar to specific performance where changes have taken place and circumstances have occurred on account of which it would be inequitable to enforce the performance, as where the property has in the meantime greatly increased in value. In such cases, though time is not of the essence of the contract, a court of equity will not allow of a delay which would enable the party to take advantage of the turn in the market and have the contract performed only in case it suited him." 2 Beach on Modern Equity, section 595. It has often been said that one to be entitled to specific per--

formance must show himself to have been ready, desirous, prompt and eager. It has been so often said that it is almost a maxim in the law of specific performance, as will appear from *Clay* v. *Deskins*, 36 W. Va. 350, and the many cases cited in 12 Encyclopedic Digest 569. 'As stated above the plaintiffs did not sue for five years, not until a great change had come over that section of the country, when railroads were piercing its wilds and multiplying greatly values of land. The plaintiff, Ashby, says that Workman promised to have a survey made and make the deed, but failed to do so; and that he later promised to meet Ashby at the county seat and make the deed, but failed to do so. All this was within a month after the contract. The contract April, 1901. In December 1905 Ashby demanded a deed by letter —nearly five years after the contract. The contract does not say which party was to make the survey. As it was a sale by the acre it was the interest and duty of Ashby, as much as of Workman, to make the survey. Workman denies that he made any contract and denies that he made any promise to have a survey made and make the deed. So we cannot say that Workman agreed to make the survey. But suppose he did. The very fact that Workman failed to make the survey and deed and disappointed Ashby warned Ashby that Workman would not comply with his contract, and called for suit by Ashby and Crawford, if they intended to insist upon their contract. Nothing prevented an appeal to the courts for enforcement of the contract. Ashby himself could have had a survey made. Or he could have sued, and had the court to make a survey. But they did not sue for nearly five years after the alleged oral promise of Workman to make a survey. The door of the court house was always open to them.

Our conclusion is to reverse the decree and dismiss the bill.

*Reversed.    Bill Dismsssed.*