# CHARLESTON.

FURBEE *v.* FURBEE.

Decided March 16, 1901.

1. WILL—*Contents—Construction.*

The will of B. F. contains the following clauses: "I give my son A. J. F. my home farm, with all its appurtenances. I give my son P. F. my lower farm, that was Waitman's, with all its appurtenances; but my wife, N., to have the full control of both said farms during her widowhood, and no longer. My four daughters, namely, D., J., C., and S., to have an interest in the aforesaid farms as long as they may remain single, and no longer." *Held*, the widow takes a life estate in both farms, subject to be defeated by her marriage; then to the four daughters for life, subject to be defeated as to them, respectively, by marriage; remainders in fee to the sons, respectively, as to the farms. (p. 199).

2. WILL—*Intent—Circumstances of Testator.*

The intention of the testator is to be collected from the whole will justly interpreted, having regard to the circumstances of the testator, and the relation in which he stood to the parties claiming under the will, and the subjects disposed of by it. (p. 198).

3. WILL—*Intention—Technical Words.*

Where the will plainly shows the intention of the testator, and he has failed to use proper technical words to express his meaning, the court may supply them to effectuate his manifest intention, and for such purpose only. (p. 198).

4. WILL—*Whole Document Construed.*

The court will, if possible, adopt such construction as will uphold all the provisions of the will; and in the attainment of this object the relative order or position of the bequests or devises may be disregarded, if, by transposing them, a consistent construction of the whole will can be deduced. (p. 200).

Appeal from Circuit Court, Tyler County.

Bill by Caroline Furbee against Presley M. Furbee. Decree for defendant, and plaintiff appeals.

*Reversed.*

ENGLE & RIGGLE and T. P. JACOBS, for appellant.

DAVID F. PUGH, O. W. O. HARDMAN and J. H. STRICKLING, for appellee.

POFFENBARGER, JUDGE:

On the 27th of November, 1858, Bowers Furbee of Tyler County this State, made his last will and testament as follows:

"I, Bowers Furbee, of Tyler County, State of Virginia, do hereby make this my last will and testament in manner and form as follows, to-wit: I give my son Andrew Jackson Furbee, my home farm, with all its *appertenances* I give my son Presley Furbee my lower farm that was Waitmans with all its *appertenances* but my wife Nancy to have the full *controle* of *boath* said farms during her widowhood and no longer the aforesaid Nancy to dispose of the personal property as she may see proper without appraisement or public sale.

"My four daughters namely Drucilla, Jane, Caroline & Sophia to have an interest in the aforesaid farms as long as they may remain single and no longer.

"Drucilla to have one bed and beden, one cow, and one set of chairs, Jane to have one bed and beden, one cow, one side saddle and one set of chairs. Sophia to have one bed and beden, one cow and a side saddle and a set of chairs.

"My sons Alexander and George Furbee and my daughters Margaret Bond, Mary Bond, Anny Elizabeth and Susan Wells have had their portion.

"I hereby constitute and appoint my wife Nancy Furbee executrix of my last will and testament.

"In witness whereof I set my hand and seal this 27th day of November, 1858.

BOWERS FURBEE, (Seal.)

Witness, W. UNDERWOOD,
ZANE UNDERWOOD."

On or about the 24th day of March, 1875, he died, still seized of the two farms mentioned in the will, without having altered or

revoked this will, and left surviving him all the persons named in it as beneficiaries. The widow, Nancy Furbee, died August 22, 1880, without having married again. Jane Furbee intermarried with Thomas Morris in 1860; Sophia Furbee intermarried with Geo. B. Stathers in 1869. Drucilla Furbee died in 1888. Caroline Furbee the plaintiff and appellant here, is the only one of the four daughters named as devisees in the will still living and unmarried. She instituted this suit in chancery in the circuit court of said county on the 15th of February, 1897, against said Presley M. Furbee setting forth in her bill of complaint the foregoing facts exhibiting therewith as a part of it a copy of said will alleging that by virtue of it, she has, at least, an estate for life, defeasible upon her marrying, in the farm described in the will, as "my lower farm that was Waitmans," and praying that the will may be construed and her interest in said farm fully determined; that said Presley M. Furbee be compelled to account to her for the rents, issues and profits of said farm, or for any sum of money that may be found due her under said will; and that such other relief, both general and special, as to equity seems meet, be granted her.

On the 26th of April, 1897, Presley M. Furbee demurred to the bill assigning as grounds therefor that there is no equity in the bill that W. H. Furbee and others ought to be made parties to it, that the plaintiff has been guilty of *laches* respecting her supposed claim, that she relies upon a provision in the will which is ambiguous and void for uncertainty, and that her claim is barred by the statute of limitations. The demurrer was overruled and the defendant answered the bill.

The answer, after admitting the facts stated in the bill, denies that said Caroline has any estate or interest in said farm by virtue of anything contained in the will, and admits that after the death of said Nancy Furbee, defendant took possession of the farm and converted to his own use the rents, issues and profits thereof, and avers that he was legally entitled so to do, and ever since her death, he has occupied the land to the exclusion of the plaintiff and adverse to her claim and that of every other person. The answer then alleges that within a year after the death of said Nancy, upon a parley and attempt to construe what said will meant in regard to the provisions in behalf of the plaintiff and others, they were wholly unable to satisfy themselves as to the testator's meaning, and what, if anything, the complainant

was entitled to, and they thereupon verbally agreed by way of compromise and settlement of plaintiff's claim, that the defendant would furnish the plaintiff annually so long as she remained unmarried, certain corn, wheat and hay and other provender for stock, which was fixed at about twenty bushels of corn, five bushels of wheat, and sufficient feed to winter her cow, and that agreement was fully performed during all the years from the date of the agreement until the year 1896, when she for the first time set up the claim contended for in her bill. These are the only important parts of the answer.

To the answer the complainant filed a special reply, denying that she had so compromised and settled her claim, and alleging that on the contrary said defendant, well knowing she had an abiding and substantial interest in the lands, voluntarily proposed to give and did give her annually after said Nancy's death, of the rents, issues and profits of the land, about the quantities of corn, wheat and feed mentioned in the answer, as well as some coal and wood, which, together with what she received from Andrew Jackson Furbee on account of the other farm, was inadequate to her support. As to the alleged agreement she also relies upon the statute of frauds.

Depositions of several witnesses were taken for both plaintiff and defendant, relating principally to the verbal agreement, the support received from the farm by plaintiff and its adequacy, and the present and former condition of the farm and its value. At the final hearing, the bill was dismissed, and the plaintiff brings the case here on appeal from the decree dismissing it.

The questions presented here are: *First,* what interest or estate, if any, said Caroline Furbee has in said farm described in the will as "my lower farm that was Waitmans."

*Second,* Is she prevented by her *laches* from asserting her claim to such interest or estate?

*Third,* Is her claim barred by the statute of limitations?

*Fourth,* Has she surrendered that estate?

The solution of the first question depends upon whether or not, as to the alleged interests of the four daughters therein named, of whom the appellant is one, the second and third clauses of the will are void for uncertainty. The appellee having the affirmative of this proposition to maintain, contends that the description of the lands as tracts, in which the interest is given, of the portions of the lands in which it is given, and of the

estate or nature of the interest, are all fatally indefinite and uncertain. It is insisted that, if the testator ever intended to give the appellant and her three sisters any estate in the lands, he failed to express it by the language used in the will, and the court can give her no aid without subverting established rules of law.

The tracts of land mentioned in the will to reach an interest in one of which is the object of this suit, are certainly sufficiently identified by the words "my farm that was Waitmans," and "my home farm," which descriptions are much more specific and definite than language often used in wills, respecting the subject of the devise. Suppose the testator had said, "I devise all my real estate to A." Could it be contended that this language is too indefinite and uncertain? Certainly not; and yet it is far more general and much less specific than the language under consideration here. It does not describe the land by metes and bounds nor locate it by reference to any natural or artificial monuments it is true, but in how many instances is that done? It is a rare exception rather than the rule. Furthermore, it is wholly unnecessary. Extrinsic evidence is always admissible to identify the subject of a devise in a will. It involves no question of the testator's intention, nor contradiction of the terms of the will. It neither adds to nor takes from, nor varies, the will, nor falls within the rules relating to the admissibility of extrinsic testimony to explain an ambiguous provision of the instrument. It bears no relation whatever to the question of the construction of the will, in the technical sense of the words. It goes no further than to identify the subject of a right or estate vesting in the owner by the plain terms of a will that requires no construction, just as it may be used to ascertain, locate and identify a tract of land conveyed by a deed in terms of general description.

Sir W. Grant, M. R., said in *Sanford* v. *Raikes,* 1 Mer. 646: "I have always understood that where the subject of a devise was described by reference to some extrinsic fact, it was not merely competent, but necessary; to admit extrinsic evidence to ascertain the fact, and through that medium to ascertain the subject of the devise. * * * * Here the question is not upon the devise, but upon the subject of it. Nothing is offered in explanation of the will, or in addition to it. The evidence is only to ascertain what is included in the description which the testator has given of the thing devised."

In saying "My lower farm that was Waitmans" the testator has

provided the means of ascertaining it according to the maxim *id certum est quod certum reddi potest.* In any legal proceedings in which the question of the identity of the farm may arise, parol evidence is admissible to show the particular farm owned by the testator, and which had belonged to Waitman, with its description by metes and bounds if necessary, and then the subject of the devise is rendered as certain as if it had been specified in the will by the most complete description. The same can be done in the case of a deed, or other instrument by which title is vested. No ambiguity would arise, and no construction of the will necessitating adherence to "Proposition 7" in Wigram on Wills 188, would be involved, unless it should be contended that the testator owned two lower farms that had been Waitman's. The description we have here is vastly different from that in *George* v. *Bates,* 20 S. E. 828, cited for appellee, which was "a piece and parcel of land near Bacon Quarter Branch." Even here the court permitted extrinsic evidence in an effort to find the subject of this most indefinite description. So, in *Dickens* v. *Berns,* 79 N. C. 490, cited for appellee, "One tract of land lying and being in the county aforesaid, adjoining the land of A. B. containing 20 acres more or less, "has not a word in it by which it can be certainly identified. A dozen twenty acre tracts might adjoin the lands of A. B. and this one might be on any side of it." The description in this will is more like that in *Brown* v. *Coble,* 76 N. C. 391, which reads: "A tract of land in said county on the waters of Stinking Quarter adjoining the lands of—of which Brown died seized and possessed." The same court held this description susceptible of explanation by extrinsic evidence, and therefore, sufficient. In *Westfall* v. *Cottrell,* 24 W. Va. 763, also cited by appellee, the description was "forty acres off the Spring fork end of any tract of one hundred and forty-seven acres on Beech Fork in Calhoun County." It is an obvious impossibility to identify by extrinsic evidence any particular forty acres to which such description is applicable. It furnishes no means of identification as the description in this will does.

The same is true of the description in *Mathews* v. *Jarrett,* 20 W. Va. 415, which reads: "Ten acres of land on the west side of the branch on the Keeney Place where said Mathews now resides." What particular ten acres on that side of the branch? If it had been the "ten-acre lot or tract on which Mathews resides on the west side of the branch and on the Keeney Place," it would have

been sufficiently certain. The description of the subject of a contract deed or will is sufficient, if, by the aid of extrinsic evidence, it can be identified.

In considering the other two grounds of alleged uncertainty together, we must admit that the testator in stating his intention, has used no formality or care, but, if, from the language of the will his intention can be found and given effect, that is immaterial.

"In the consideration of wills the most unbounded indulgence has been shown to the ignorance, unskillfulness and negligence of testators; no degree of technical informality or gramatical or orthographical error, nor the most perplexing confusion in the collation of words or sentences will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its author, the faintest traces of which will be sought out from every part of the will and the whole carefully weighed together, but if, after every endeavor, he find himself unable, in regard to any material fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence." 1 Jarman on Wills 326; *Wooten* v. *Redd,* 12 Grat. 196; 2 Min. Ins. 1054.

"In construing a will, effect must be given to every word, if any sensible meaning can be given to it, not inconsistent with the general intention apparent on the whole will taken together. Words are not to be rejected nor altered, unless they manifestly conflict with the intention of the testator, or unless they are absurd, unintelligible or unmeaning, for want of any subject to which they can be applied." *Wooten* v. *Redd, supra;* 2 Black. Com. 379. No part of a testament will be held void for uncertainty or overruled by another part, if it can be avoided. O'Hara Con. Wills 32; *Kip* v. *Kip,* 2 Pa. "It is a plain dictate of good sense, in order to arrive at the meaning and intention of the parties, not to fix the attention exclusively on any one clause, but to take the whole together, surveying every part of the instrument, and endeavoring so to construe it that every part shall have some effect, if that be practicable, rather than be wholly inoperative. 2 Min. Ins. 1056; *Parker* v. *Wasley,* 9 Grat. 477; *Cheshire* v. *Purcell,* 11 Grat. 771; *Hinton* v. *Milburn,* 23 W. Va. 166.

"Extrinsic evidence which is introduced to place the court as nearly as practicable in the position of the testator, and show the

state of his property at the time he made his will, should be received by the court and is entitled to have its just bearing upon the legal import and effect of the will." *Atkinson* v. *Sutton,* 23 W. Va. 197. "To aid in ascertaining the true construction of the will, evidence may be received of any facts known to the testator which may reasonably be supposed to have influenced him in the disposition of his property; and as to all the surrounding circumstances at the time of making the will." *Wooten* v. *Redd, supra.*

"Intention is the polar star in the construction of all writings but with peculiar· emphasis in the interpretation of wills. But that intention is to be collected from the words of the whole instrument justly interpreted having regard to the circumstances of the testator, and the relation in which he stood to the parties claiming under the will, and the subjects disposed of by it." 2 Min. Ins. 1066, citing numerous authorities. "The intention of the testator is to be sought in construing a will; and when he does not use proper technical words to express his meaning, the court may supply them in order to effectuate his manifest intention, and for such purpose only." *Liston* v. *Jenkins,* 2 W. Va. 62. Transposition of words will also be made to effectuate the intention of the testator. Jar. on Wills, 468.

Here all the facts and circumstances surrounding the testator, which may have influenced him in the disposition of his property by the will under consideration appear by the admission of the parties. There is no dispute about the identity of the farm disposed of, nor of the persons to whom it was devised. The appellee admits he is in possession of said farm and claims it under said instrument. He also admits that the testator had these four daughters to provide for. Apparently the will disposes of all the property the testator had. Under these circumstances there is no reason for resorting to the testimony of witnesses on any of these points, and it would be improper to resort to it for the purpose of proving parol declarations of the testator to show what he meant by the words of the will.

As to what the interest of the daughters in said lands are, we must gather, under the rules of law, the meaning of the words used by the testator in the will respecting that interest from the will itself, read it in the light of his situation and surroundings at the time he used them, if it be possible thus to make them mean that he intended thereby to give them anything. His estate was not large. He had four sons, eight daughters, and, at his

death, his widow to provide for, thirteen in all. He had already provided for two of the sons and four of the daughters, and intended they should take nothing more at his death. For the remaining seven persons, all of them natural objects of his bounty as well as of his affection, and as to whose welfare he may well be supposed to have had an equal solicitude, being at the same time conscious of the fact that by the probable marriage of the sons their fortunes might not be increased while their burdens in a financial sense might be, and by the marriage of the daughters their dependence might be lessened and additional support provided, that being the theory upon which the law rests, he had only a small amount of personal property and the two farms. It is perfectly clear from the language of the will that he has attempted by it to provide for all to the extent of his ability, and equally so that his division of what property he had is fair and just to all parties under the circumstances, and such a division as the natural affection of the head of such a family for all its members would prompt. It is not denied by even the appellee that such an attempt appears on the face of the will. The objection is that the words used are not sufficiently definite and certain to effectuate the purpose attempted to be executed; in other words that the language "My four daughters namely, Drucilla, Jane, Caroline and Sophia to have an interest in the aforesaid farms as long as they may remain single and no longer" is insufficient to carry any estate in the lands. Let us substitute the word "estate" for the word "interest" here as was done in the case of *Hurst* v. *Hurst,* 7 W. Va. 289. This being done we find an estate in these farms vested in the daughters as long as they remain unmarried, which may be until death, therefore, a life interest, life estate, subject to be defeated by marriage. In *Hurst* v. *Hurst, supra,* the words used in the deed were "that I, H. S. hold a life interest in the above described tract of land," and the court held that the words "life interest," taking the sentence all together, meant "life estate," and that its legal effect was to reserve to the grantor an estate for and during his life in the lands. And this was done without any resort to extrinsic evidence, the court holding there was no such ambiguity in the language as to either admit or require it. As in the case at bar, the grantor's intention was apparent upon the face of the deed, but unskillfully and awkwardly expressed.

In this will the language providing for the sons, the widow and

the daughters is all directly connected, in juxtaposition, and might well have been included in a single sentence; but these provisions are in the reverse of the order in which an experienced conveyancer would have put them. The remainder is placed first in order and the particular estate last. Shall it be said that by this clear result of the want of skill in the person who wrote the will, the intention of the testator shall be defeated? Shall the perfectly discernable purpose of the testator yield to plain undeniable negligence or accident? That is not the spirit of the rules of construction herein set out. On the contrary, they are designed and adhered to to make just such results impossible, and thus enforce the plain meaning of the will without regard to form or technicality.

"It is quite clear that where a clause or expression, otherwise senseless and contradictory, can be rendered consistent with the context by being transposed, the courts are warranted in making the transposition." Jar. on Wills 465. In *Davis* v. *Callahan,* 78 Me. 313, Foster, Judge., after acknowledging the rule that where the testator makes a general devise or bequest which would include the whole of his estate, and in other parts of the will makes specific dispositions, such specific dispositions are to be regarded as exceptions or qualifications out of the general dispositions, says: "But there are other rules equally important in the construction of wills, and one of them is that the court will if possible, adopt such construction as will uphold all the provisions of the will. In the attainment of this object the relative order or position of the bequests or devises in the will may be disregarded, if it is possible, by the transposition of them, to deduce a consistent disposition from the whole will."

Applying this rule, the suspicion of such repugnancy in the provisions made for the sons, widow and daughters respecting these two farms disappears. Placing them in their natural order, and that adhered to in conveyancing, we find an estate for and during her natural life in the two farms, subject to be defeated by her marriage, provided for Nancy Furbee; then an estate for life subject to be defeated by marriage to the four daughters; remainder in fee as to the home farm to Andrew Jackson Furbee; and remainder in fee as to the "lower farm that was Waitmans" to Presley M. Furbee. Thus every part of the will is given effect, and it is perfectly plain that the language of that instrument shows this to be the intention of the testator. The terms of the.

will leave no room for dispute as to the property in which these defeasible life estates to the widow and daughters are created. As to the first life tenant, the will reads: "My wife Nancy to have the full controle of boath said farms during her widowhood;" and as to the daughters, naming them, it says they are "to have an interest in the aforesaid farms as long as they remain single." The estates are thus created in the whole of each of the two farms.

Jane and Sophia married before the testator's death occurred, and Drucilla Furbee died in 1888. Thus the devises to Jane and Sophia lapsed. "The general doctrine, at common law, is that a devise lapses in all cases where the devisee dies before the testatortor. And if the devise be to several, as tenants in common, and one of them dies in the testator's life time, his share lapses." 2 Min. Ins. 1049; *Frazier* v. *Frazier*, 2 Leigh 649.

By the death of Drucilla Furbee, her estate ended, and the owner of the fee, Presley M. Furbee, came into the right of possession of another one-fourth of the "lower farm that was Waitmans," and he is deemed to have been in possession legally, of an undivided three-fourths of it in his own right from the date of her death, and of an undivided one-half of it from the death of his father. In the other undivided one-fourth Caroline Furbee, the appellant, is seized of a defeasible estate for and during her natural life. As to the agreement by which it is claimed Caroline Furbee compromised and settled her claim to any interest in the two farms, Presley Furbee, the appellee, says in his deposition: "Shortly after my mother's death, I don't remember now, he (A. J. Furbee) came down to our place and we had a talk with the girls, and we talked this matter over in regard to what he had been formerly furnishing in the support of his father and mother, and they agreed if they (we) would give them so much corn, wheat, hay and fuel, they would go and live down with their sister, Jane Morris, which was about a mile." Caroline speaks of no agreement in her deposition, but says her brother thought it would be better for her and her sister to be keeping house, and that Drucilla was in bad health, and they were lonesome after their mother's death, and they simply went to their sister's to live without invitation. She admits that her brothers have furnished her the corn, wheat, hay and fuel, and that Presley has given her some small sums of money, the amounts she names aggregating thirty dollars.

This evidence establishes nothing in the shape of an agreement except that the appellee was to reside with her sister and receive certain support there from appellee instead of residing with him and receiving her support in his family, as she and her sister and mother had been doing. There was no sale of her interest in this. It could amount to no more than the establishment of the relation of landlord and tenant between the parties in respect to the undivided one-fourth of the land, in which the defeasible life estate exists.

But there is no express contract of lease. The arrangement is consistent with the idea of a mere accounting on the part of the tenant in possession to his co-tenant for such an amount on account of the rents, issues and profits as she has evidently been willing to accept in satisfaction of her claim thereto, until about the time this suit was brought. This amounts to an unequivocal recognition by Presley Furbee of her title, and precludes the existence of any *laches* on her part as well as the acquisition of absolute title to all of the land by Presley Furbee, by adverse possession free from the defeasible life estate of Caroline Furbee in the undivided one-fourth of it.

The alleged verbal compromise and settlement, whereby the appellee claims to have acquired the title of the appellant is within the statute of frauds, and void, if the evidence were sufficient to show that a sale of that title was intended. "Some of the cases hold that a surrender can be legally made only by deed or note in writing or by act and operation of law; a parol surrender being invalid under the statute of frauds, even in those cases where there was an express agreement between the lessor and the lessee that the latter might so surrender the estate." Kerr R. Prop. 1160.

"As there is a privity of estate between the parties, no livery of seizing is necessary to perfect a surrender, though the surrender is required by the statute of frauds to be in writing." 4 Kent Com. 104.

"By the English statute of frauds adopted or copied in all the states, no surrender is valid unless made in writing, signed by the party, or by operation of law." 2 Hilliard R. Prop. 305.

While there is no perceptible ground upon which an accounting can be had against the tenant in possession, except from the date to which he has already accounted, the right to have partition exists upon the allegations of the bill and its prayer for general relief, if the appellant shall ask it in the court below.

The decree dismissing her bill is therefore erroneous, and must be reversed, and the cause remanded for further proceedings therein according to the principles herein stated.

### ON RE-HEARING.

In the petition for re-hearing it is urged that, if the provision in the will in favor of the four daughters is sufficiently certain to transmit an interest or estate, it must be an estate in fee simple, or a conditional limitation, in support of which *Monroe* v. *Hall,* 97 N. C. 206, is cited. That case decided that, in a grant to a woman as long as she remains single, her grantee in a deed, made prior to her death, takes at her death unmarried, a fee simple. It is then insisted that the provision so construed is repugnant to, and irreconcilable with the previous devisees of the farm to the sons and therefore void. It cannot be so construed. We must look to the whole will and give every part of it effect if possible. At common law the devise would have been of a defeasible estate for life, there being no words of inheritance in the clause. 2 Bl. Com. 156. Under our statute Code, chapter 71, section 8, the language imports a defeasible fee simple "unless a contrary intention shall appear by the will, conveyance or grant." The English statute 1 Vic. chapter 26, section 28, is very much like ours. Under that statute it has been held that if the same land be given in one part of the will to A. and in another to B. the presence of words of limitation in the latter gift, and their absence in the former, are material to correct the apparent contradiction and to show that the testator meant a gift to A. for life with remainder to B. in fee. Jarman on Wills 1135; *Grovenor* v. *Watkins,* 6 Law Rep. C. P. 500.

*Reversed.*