# CHARLESTON.

## STEWART *v.* TENNANT.

Submitted January 16, 1902. Decided March 28, 1903.

1. INFANT—*Decree—Bill.*
   An infant, under the statute allowing him to show cause against a decree, may do so by original bill, although the cause alleged is error of law apparent on the face of the decree. (p. 566).

2. DEED—*Cancellation—Decree.*
   When such bill seeks relief, by way of cancellation of a deed and an accounting for waste, rents, issues and profits,

consequent upon the reversal of the decree, and fully sets forth the defects in the decree, and incorporates the pleadings, decrees and orders as exhibits, the suit is not collateral, but directly attacks the erroneous decree, and the record of the cause in which it was pronounced may be introduced upon the hearing as evidence. (p. 563).

3. BILL—*Decree.*

Where the allegations of a bill are sufficient to support a decree, and there is a prayer for general relief, and such decree is pronounced, it will stand, although not specifically prayed for in the bill. (p. 564).

4. INFANT—*Decree—Laches.*

Where an infant proceeds promptly upon attaining his majority, to show cause against a decree, the defense of *laches* cannot be made. (p. 565).

5. PARTITION—*Commissioners.*

Before there can be a sale of land in a partition suit, it must be ascertained and determined that partition thereof cannot conveniently be made, and the usual and preferable mode of establishing such fact is by a report of commissioners, so stating, and setting forth the facts from which it appears. (p. 566).

6. PARTITION SUIT—*Infants—Guardian.*

Where, in a partition suit, there is an allotment of part of the land and sale of the residue, the allotted part and the proceeds of the part sold must each be divided among all the co-tenants of the entire subject, in the absence of a consent decree, when adults only are interested, and it is error to sell the undivided interests of infants in such suit, when there is no proceeding therein by their guardian for such sale in the manner prescribed therefor by law. (p. 567).

7. INFANT—*Real Estate—Sale—Title—Decree.*

A party to a suit, moving the sale therein of an infant's real estate, and purchasing the same under a decree therein made, is not protected by section 8 of chapter 132 of the Code, and, on reversal of the decree, his title falls. (p. 568).

8. DECREE—*Court—Jurisdiction.*

A decree entered in a cause, in which all interested parties are before the court, and upon a bill upon which such decree would have been proper, under certain conditions which might have been shown by proof, upon the allegations of the bill, to exist, is not void for want of jurisdiction, however erroneous it may be. (p. 568).

9.  LIMITATIONS OF ACTION—*Constitution.*

The act, passed by the legislature, March 25, 1873, entitled "An act concerning the limitation of actions in certain cases," is void for want of expression of its object in the title thereof, as required by the first clause of section 30 of article 6 of the Constitution, providing that, "No act hereafter passed, shall embrace more than one object, and that shall be expressed in its title."   (p. 569).

10.  ACTIONS—*Suits.*

If said act could be held free from the fatal defect of unconstitutionality, it would be within the repealing clause of the act of March 16, 1882, constituting chapter 104 of the Code, and not available as a defense to any action or suit.   (p. 573).

11.  TENANTS IN COMMON—*Co-tenants—Suits—Error.*

Tenants in common, committing waste against a co-tenant, are wrong doers, and may be sued on account thereof jointly or separately, and when sued jointly, it is not error to dismiss the cause as to one of them, on motion of the plaintiff, and over the objection of the other.   (p. 574).

12.  DOWER—*Assignment—Oil Wells.*

Where, before assignment of dower, one claiming by purchase from certain heirs and the widow, drills oil wells upon the land and extracts large quantities of oil therefrom, without having obtained the consent of his co-tenant to such development; and such non-consenting co-tenant brings his suit for an acocunting, it is error to decree to him his entire interest in the oil produced and thereafter to be produced, free from any charge on account of the dower interest.   (p. 576).

13.  DOWER—*Court—Receiver.*

In such case, the holder of the dower interest is entitled to the interest on one-third of the proceeds of the oil going to the non-consenting co-tenant, until the death of the dowress, and until that date the fund upon which such interest is paid remains under the control of the court through its general receiver.   (p. 578).

14.  INFANT—*Erroneous Decree—Guardian.*

An infant, whose land has been sold under an erroneous decree, and the purchase money paid to his guardian, and who sues for reversal of the decree and cancellation of the deed, must tender with his bill, the purchase money, or offer therein to repay it.   (p. 579).

Appeal and *supersedeas* from Circuit Court, Tyler County.

Action by Lewis Stewart against Jacob S. Tennant, *et als.*
Judgment for plaintiff, and defendant appeals.

*Reversed and Remanded.*

PUGH & PUGH and J. H. STRICKLING, for appellees.

FLEMING & FLEMING, J. V. BLAIR, and RIGGLE & ENGLE, for
appellants.

POFFENBARGER, JUDGE:

The South Penn Oil Company and Jacob S. Tennant com-
plain, on appeal of certain decrees, made by the circuit court
of Tyler County, upon a bill filed against them and others by
Louis Stewart for relief from certain alleged erroneous decrees
pronounced by the same court in a former chancery suit, under
which Tennant and one Cassie A. Tennant, by judicial sale, ac-
quired the title, as they claim, to a certain tract of land, and
afterwards leased the same for oil and gas purposes to said South
Penn Oil Company, and for an accounting, on the part of said
defendants, for one-twelfth of the oil taken from said land. The
case is substantially as follows: James Stewart, being the owner
of said tract of land, which contained one hundred and seventy-
six acres, died in the year 1889, intestate and leaving surviving
him a widow and twelve children. Afterwards, and prior to
July 1, 1890, Jacob S. Tennant and Cassie A. Tennant pur-
chased the undivided interest of six of said children. They then
brought a partition suit, praying for an assignment of the dower
and division of the land, in which a decree was entered, adjudi-
cating the right to partition and appointing commissioners to
make it and assign the dower. Before this decree was executed,
at the August term, 1891, Jacob S. Tennant, by leave of the
court, filed in the cause, deeds, executed by the widow and four
others of the children, conveying to him the dower interest and
an additional four-twelfths of the land, making ten-twelfths of
the entire tract, owned by him and Cassie A. Tennant. The
other two interests were owned by the plaintiff, Louis Stewart,
and Emma Stewart, both infants. Then, evidence was intro-
duced at the bar of the court, tending to show that the interest
of said infants would be promoted by a sale of their interest in
the land, and payment of the proceeds thereof to their guardian,

and a decree was entered, setting aside so much of the former decree as ordered a partition of the land, decreeing a sale of the undivided interest of said infants, which decree was, on the 8th day of December, 1891, executed, Jacob S. Tennant becoming the purchaser for the sum of two hundred dollars. This sale was confirmed and, on August 31, 1895, the commissioner who sold the land under the decree, executed a deed therefor to Tennant. Immediately afterwards, the Tennants took possession of the land and, by two leases, dated, respectively, June 28, 1894, and May 1, 1897, leased it to the South Penn Oil Company for oil purposes, and on or about the 9th day of April, 1897, said company entered upon the land and commenced drilling for oil and gas, and ever since has been in the exclusive and uninterrupted possession of the same for oil and gas purposes and has drilled eleven wells on the land, all of which produced and are producing considerable quantities of oil.

On the 29th day of June, 1900, the plaintiff, who had been under age, as has been stated, when said decrees, sale and leases were made, commenced this suit, by an original bill which was filed at July rules, 1900, alleging his infancy as aforesaid, setting up all of said proceedings and transactions, alleging that the decrees and proceedings in said former suit, whereby the Tennants claimed to have acquired title to his interest in the land, were erroneous, illegal and void, showing that he had attained the age of twenty-one years on the 11th day of May, 1900, and praying that the said Tennants, South Penn Oil Company and Eureka Pipe Line Company be required to answer the bill under oath, and show the quantity of oil taken by them, and each of them, from said land, the amount held by said Pipe Line Company, and disposed of by it or any of the defendants; that an injunction be awarded, restraining the Tennants and South Penn Oil Company from taking and removing any timber, oil or other material from the lands and from selling or otherwise disposing of the same or the proceeds thereof; that if the court should permit them to operate on the land it should appoint a receiver to take charge and control of one-twelfth of the oil then on hands or that might be thereafter produced; and that general relief in the premises, as to equity might seem right, should be granted.

To this bill, the appellants and others of the defendants demurred, and the demurrers having been overruled, they filed

their separate answers. Depositions were taken and filed, and, on the 29th day of August, 1901, the decrees complained of were pronounced. The objection to one of these is that it sustained exceptions to parts of the answers of the South Penn Oil Company and the Eureka Pipe Line Company, and to the other that it permitted the plaintiff to file in this cause the record of said former chancery suit, dismissed from the case Cassie A. Tennant on motion of the complainant, set aside and annulled the decrees made in said former chancery cause at the August and December terms, 1891, set aside, annulled and cancelled the said deed to Jacob S. Tennant, made under said decrees, and the lease dated May 1, 1897, in so far as they relate to, and purport to convey, the interest of the plaintiff in said land, as clouds upon his title; required Jacob S. Tennant to account to the plaintiff or to him and his assigns for one-twelfth of the royalties, bonuses and rentals received by him from the land, and the South Penn Oil Company to account to the plaintiff or to him and his assigns for one-twelfth of seven-eighths of the oil and gas taken from the land, on the basis of a charge against said company of the whole of one-twelfth of said seven-eighths, to be credited with one-twelfth of the actual cost and expense of production, and the difference to be paid over to the complainant or to him and his assigns. The Oil Company and Jacob S. Tennant were required also to account to the plaintiff for one-twelfth of all the timber taken by them from the land within the five years next prior to the commencement of the suit, and the cause was referred to a commissioner, to state and report an account, in accordance with directions given in the decree.

Although there are two branches to the case, one represented by the South Penn Oil Company and the other by Jacob S. Tennant, whose interests, in some of the questions raised, are common, while in others they are not, and although several questions are raised by the demurrers, all of which are carried into the decree, it is unnecessary, in the discussion and disposition of the errors assigned, to separate and sub-divide them with reference to parties and the stages at which the alleged causes of complaint arose.

One contention is that this suit is not a direct proceeding to uproot the decrees and proceedings in the former chancery cause, but is separate, distinct and collateral thereto, and, for that rea-

son, the demurrer should have been sustained and the decree setting aside said decrees pronounced in the former suit and the deed and lease made thereunder, is erroneous. No argument is submitted in support of this contention, from which fact it may be inferred that it, as well as some others, which stand in the same condition, is not regarded by counsel for appellants as being very well founded. The bill makes a direct attack upon all these decrees and proceedings, setting them out in detail, making them exhibits, and alleging their infirmity, erroneousness and illegality, but it does not specifically pray that they be set aside, annulled and reversed. However, it asks specific relief which can be granted in no way other than by the destruction of these decrees, the deed and lease, and the prayer for this relief is based upon the allegation of the defects in said decrees. Besides the specific prayer, there is a prayer for general relief, preceded by allegations upon which a prayer for the reversal of the decrees and cancellation of the deed and lease might properly have been predicated. It is well settled that when the bill contains allegations to support a decree and a prayer for general relief, a decree may be predicated thereon, although not specifically prayed for. *Furbee* v. *Furbee,* 49 W. Va. 191, 202; *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275; *Goff* v. *Price,* 42 W. Va. 384; Bart. Chy. Pr., 281. This, therefore, is an untenable objection to the bill and the decree. Moreover, in order to reach these decrees to obtain relief, the plaintiff, proceeding under the statute, saving to infants the right to show cause against a decree within six months after attaining majority, it was not required to proceed by petition or bill of review in the same cause. This is settled law in this State. He may proceed by petition, bill of review, supplemental bill in the nature of a bill of review, or by original bill, for defects consisting of error of law only, as in this case. *Lafferty* v. *Lafferty,* 42 W. Va. 783, 785; *Ewing* v. *Winters,* 39 W. Va. 490; 1 Dan. Ch. Pr., (6th ed.), 174.

*Laches* is also relied upon. The suit having been brought promptly after the plaintiff became of age, it is not open to the defense of *laches. Knight* v. *Watts,* 26 W. Va. 176.

In view of what has been said on the subject of plaintiff's choice of remedy, and the sufficiency of the bill, it is hardly necessary to remark that the court did not err in permitting the plaintiff to file in this cause, the record of said former chancery

cause in which the erroneous decrees attacked by this bill were made. That record constituted the evidence conclusively proving the allegations of the bill.

Having disposed of the preliminary questions, the next inquiry is as to the propriety of the action of the court below in its disposition of the matters which constitute the principal reliance of the defendants. That the decrees under which they claim are erroneous is absolutely beyond question. Before a sale of land can be made in a suit for partition, it must appear that partition thereof in kind cannot be conveniently made. That is the language of the statute, and the court has decided that the statute means exactly what it says. *Casto* v. *Kintzel,* 27 W. Va. 750; *Zerkle* v. *McCue,* 26 Grat. 517. The mode and manner of establishing this fact is also well settled. The court, after deciding that the plaintiffs are entitled to have partition, and adjudicating the rights and interests of the parties in the land, appoints commissioners to go upon the land and make partition thereof if they find it susceptible of partition without detriment to the interests of the parties. If these commissioners find that such partition cannot be conveniently made, they so report to the court, and thereby sufficiently establish the fact, if the report sets forth sufficient facts and is confirmed, to enable the court to decree a sale instead of partition, if it further appears that the interest of those who are entitled to the subject or the proceeds thereof will be promoted thereby. Freeman on Coten. & Par., sec. 543; Bart. Ch. Pr., 308; 4 Min. Ins., 1464. No such report was ever made in this cause, nor does it appear that it was, in any manner, shown to the court that partition could not be made. The decree ordering the sale does not so recite. It says that it appears from "evidence adduced at the bar of the court that it will be to the interest of the said two infants, Emma Stewart and Louis Stewart, that their estate will each be promoted by a sale of their said one-twelfth interest in and to said tract," etc., but there is no recital to the effect that partition cannot be conveniently made. The evidence, adduced at the bar and upon which the court proceeded is not in the record, was probably oral and never reduced to writing, and there is no intimation in the decree that it showed partition could not be made, even if such fact could be made to appear in that way. The absence of any showing that the land could not be partitioned, is

fatal to the decree of sale as one made under the statute providing for sale in partition suits. *Casto* v. *Kintzel, supra; Zerkle* v. *McCue, supra.* The statute further provides that when partition cannot be conveniently made, the court may decree an allotment of part and sale of the residue, if the interests of those entitled would be thereby promoted, but it is insisted in the brief of counsel for the appellee that this does not mean that the undivided interest of some of the parties may be sold; nor that part of the land may be sold as belonging to some of the parties, and the residue divided among the others as land belonging to them. It is claimed that what is allotted must go as the property of all the parties interested in the entire subject and be divided among them, and that what is sold must be sold as the property of all the interested parties and the proceeds thereof divided among them all. In support of this, the following is quoted from Hogg's Eq. Pr., sec. 373: "And where the court does determine upon the sale of the land, it should be sold as a whole, (in the absence of the consent of the parties in interest to the contrary) as it would not be just to sell as to some, and decree a partition as to others." This view seems to be reasonable, just and sound. Whether it would be unjust in any given case would depend upon the facts and circumstances thereof. But the soundness of the proposition stated by Mr. Hogg may be rested upon the language of the statute, the only authority which the court has for making a sale, and which does not authorize the court to convert the property, or the interest therein of any co-tenant, into money and deprive him of his land, unless it appears that he cannot have land because the subject is not susceptible of partition. If the owner can have his land or part of it, the court shall give it to him and not compel to give it up and take money in lieu thereof. That part of the statute which authorizes an allotment of part and sale of the residue, does not say that an undivided interset may be sold, but that part of the land may be sold and the residue partitioned. If this statute meant that an undivided interest might be sold, the partition suit in which such sale is made, would prove to be abortive, and defeat the end sought by the bill, in case the purchase should be made by a stranger. In that event, such suit would lay the foundation for another partition suit, as the purchaser would have the right immediately to demand partition again. This shows conclusively that the propo-

sition laid down by Mr. Hogg rests, not only upon the strict letter of the statute, but is also a clear expression of its essence and spirit. This departure from the statute is another reason for holding the decree of sale bad.

It is insisted upon the authority of *Hoback* v. *Miller*, 44 W. Va. 635, that the decree of sale is not erroneous but void for want of jurisdiction. A comparison of the two cases shows great dissimilarity. In the *Hoback-Miller Case*, the plaintiff had no right to file any sort of a bill upon which a sale of the infant's real estate could be enforced. It was held that she had no cause, and brought before the court no cause, for sale and that no such cause was brought within the jurisdiction of the court, and that, therefore, the decree of sale was pronounced without jurisdiction and was void. Here, the plaintiffs were tenants in common with the infant and entitled to partition, upon their right to partition, they could enforce a sale upon its appearing that partition in kind could not be made. They thereby brought before the court, not only the necessary parties, but the subject matter, cause of sale of the infant's land, and invested the court with jurisdiction for the purpose of sale. After that, in the exercise of its jurisdiction, the court departed from the rules of law governing the proceedings, which amounts to an error in the exercise of jurisdiction, but not to an act without jurisdiction. Whether the decree is erroneous and therefore voidable or actually void, having no force or virtue for any purpose, is not very material or important, but it seems to be voidable only.

The main defense, both upon demurrer and in the answer of the South Penn Oil Company, is rested upon what is known as the three year statute of limitations, an act of the legislature, passed on the 25th day of March, 1873, entitled "An act concerning the limitation of actions in certain cases," which provides, "That any person or persons, in peaceable possession of land claiming title under a lease of the same for the purpose of operating for oil or minerals, and who may have continuously remained in such possession for the space of three years, and have bored for, and in good faith expended in such boring and operating, shall be entitled to plead said facts in bar, and said facts shall be a bar to any action at law, or in equity, instituted to establish title to recover possession of said lease, or to recover the profits received therefrom." It was the defense of this statute,

set up in the answers of the South Penn Oil Company and the Eureka Pipe Line Company, which was eliminated by the court, in sustaining the exception of the plaintiff to said answers. In sustaining the exception, the court did not err. There are two reasons for so holding. One is that said act is void, and the other that, if it ever had any life, it has been killed by repeal.

On the question of the constitutionality of this statute, counsel for the appellee invoke the Fourteenth Amendment to the Constitution of the United States, section one of the Bill of Rights in the Constitution of this State, and section 39 of Article 7 of the Constitution of the State of West Virginia. It is unnecessary to give all the reasons that can be assigned for a conclusion by the court. The relation of this statute to the constitutional provisions relied upon is discussed at great length by counsel, but the argument is not entirely satisfactory, to say the least. But the act plainly violates the first clause of section 30 of Article 6 of the Constitution, which says, that, "No act hereafter passed, shall embrace more than one object and that shall be expressed in the title." All the courts, except those of California and Ohio, hold such constitutional provision to be mandatory, and where it has been materially departed from in the passage of any act, the act is held to be unconstitutional and void. Sutherland on Statutory Construction, sec. 79. "It is fatal to an act to be framed contrary to the constitution in its title and by embracing a plurality of subjects, as it would be to insert provisions to operate contrary to its other limitations." *Id.* sec. 81; *Davis* v. *State,* 7 Md. 151.

The purpose of this provision, as declared by the courts, is to prevent the enactment of laws, in a clandestine and stealthy manner, by compelling a statement in the title of the act, of its aim and purpose, to the end that the public, as well as members of the legislature may conveniently and certainly know the character of pending legislation. But for this provision, omnibus bills could be put through the legislature, carrying all kinds of measures, concealed in all forms, and neither legislator nor the public could, with any degree of certainty, fully know their contents. Diverse interests would be combined in order to unite members of the legislature who favor one measure incorporated in the bill to vote for it on that account, although containing numerous other measures of which they do not approve. This

was a great evil in legislation, for the suppression of which this clause or similar clauses have been inserted in the constitutions of many of the States. Suth. Stat. Con., sec. 78, says, "And not only were legislators thus mislead, but the public also; so that legislative provisions were stealthily pushed through in the closing hours of a session, which, having no merit to commend them, would have been made odious by popular discussion and remonstrance if their pendency had been seasonably announced." This statement is accompanied by the citation of numerous decided cases.

Although the courts construe this provision, in cases not within the mischiefs sought to be remedied by it, so as to sustain legislation, they rigidly enforce it in all cases falling within those mischiefs, and it makes no difference how meritorious the act may be. If the constitutional provision has been disregarded in the passage of it, it cannot be sustained. Suth. Stat. Con., secs. 82, 92. But it is further said in section 82, that, "The departure, however, must be plain and manifest, and all doubts will be resolved in favor of the law. The objections should be grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one subject, or, when it contains but one subject, on the ground that it is not sufficiently expressed in the title."

It will be observed that the statute requires two things, first, that the act shall have but one object, and second, that that object shall be expressed in its title. An examination of the act in question shows that it has but one object, purpose or aim, namely, to bar actions against persons holding real estate under leases for oil and mineral purposes, upon their showing that they have been for three years in the exclusive and continuous possession of the land and have bored for oil and expended money on the property in seeking for or producing oil or other minerals. It is not, therefore, open to the objection that it has more than one object. The only inquiry, therefore, is whether that object is sufficiently expressed in the title. That title has been quoted and an examination of the title alone, without consulting the body of the act, leaves it uncertain whether it imports by its terms a general statute of limitations or a statute of limitation, available only to all persons standing in a particular situation,

and is therefore, special in its nature. A title might be so framed as to cover the whole Code. It may be so framed as to cover any particular branch or subdivision of the statute law, but anything incorporated into the act written under the title which is not included in the title cannot be upheld. Hence, if the title is not as broad as the act, only such parts of the act as fall within it can be sustained. It can not be said here that the act is broader than its title if the title be regarded as indicating a statute of limitations generally. Upon that assumption, it is much narrower than its title and is fully covered by it. But is it not so narrow as to be contradictory of its title? If so, is that objectionable and fatal to it? The authorities answer this question in the affirmative, holding that a special act written under a title which is general, operates a concealment of the real nature of the act and a misleading of the public. Sutherland Con. Stat., sec. 90. It must be admitted that most, if not all of the cases, cited by way of illustration of this proposition, deals with acts, special in the sense of limitation as to locality and subject, concealed under titles more or less general, but the test is not the nature of the special act. It is whether the title, by reason of its generality, operates a concealment of the aim and purpose of the act. This necessarily occurs in every instance in which the act itself flatly contradicts what its title imports. In the sense of application and operation in every part of the State, and as to all persons who stand in the peculiar situation set forth in this act, it is general. But in its effect upon the general subject of limitation of actions, stated in the title, it is limited and special for it covers only a very limited portion of the field. Therefore, it is as clearly open to the objection of being represented by its title to be something different from what, in thuth and in fact, it is, as if it were special in the sense of locality or subject.

Upon the assumption that the title is not general, but limited and special, as the act itself is, the inquiry is whether its purpose is sufficiently indicated by the title. Looking into the act it is found that it is an act of limitation of actions against persons in possession of land, holding under leases for oil and mineral purposes. The title says it concerns the limitation of action in certain cases. There are numerous cases in which the right of action is limited in time. Whether this act is to

apply to actions for damages for wrongs, for the recovery of money on contracts or for the recovery of lands is not indicated. There is no specification, indication or even suggestion, to be found in the title, of the class of cases to which the act is to apply. There is an utter failure of expression, in the title, of the object and purpose disclosed by the body of the act, in the sense that no person can tell from reading the title that the object is what the act itself discloses, or that it has any object, unless it be the limitation of actions generally. The words "in certain cases," are not inconsistent with this view, for the general statute only applies to certain cases, all of which are specifically set forth in it.

It is true that the substance of the act is germane to the general subject of limitation of actions, mentioned in the title, and that it is generally held by the courts that the generality of the title is no objection, so long as it is not made to cover for legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. Cooley Con. Lim., 172. But the cases in which this has been asserted are such as pass upon acts having broad purposes or objects stated in their titles; the execution of which requires, or may be facilitated by, the performance of numerous other subsidiary acts, provided for in the legislative act, and which subsidiary provision, designed and inserted as the instrumentalities or agencies for the execution of the main purpose, were resisted on the ground of unconstitutionality, as not being included in the title, or as vitiating the whole act by incorporating into it two or more objects. *Montclair* v. *Ramsdell,* 107 U. S. 147; *Jonesboro* v. *Railroad Co.* 110 U. S. 192; *School District* v. *Hall,* 113 U. S. 135; *Carter Co.* v. *Sinton,* 120 U. S. 517; *Annapolis* v. *State,* 30 Md. 112; *State* v. *Union,* 33 N. J. L. 350; *Burke* v. *Monroe Co.* 77 Ill. 610; *Blood* v. *Mercelliott,* 53 Pa. St. 391; *Com.* v. *Green,* 58 Pa. St. 226. This case does not fall within that principle. A large number of cases hold also that the degree of particularity which must be used in the title of an act, rests in legislative discretion, not being defined by the constitution. *State* v. *Union,* 33 N. J. L. 354. But that is asserted in connection with the principle above referred to, and does not conflict with the well nigh universal holding that the title must not work a concealment of the real object of the act,

nor relieve from the necessity of expressing the object, in both of which respects this act is within the constitutional inhibition.

That the act of March 25, 1873, is repealed by the act of March 16, 1882, constituting chapter 104 of the Code, admits of no doubt. It falls clearly within the repealing clause of the latter act, reading as follows: "All acts and parts of acts inconsistent with the provisions of this act, and coming within the purview thereof, are hereby repealed." All acts within the purview of another act are all acts that relate to the cases that are provided for by such other act. The act of 1873 relates to limitation of actions for the recovery of land. Section 1 of chapter 104 of the Code, the act of March 16, 1882, relates to the same thing, and differs from it in this only that it covers all actions for such recovery, while the other relates to actions against oil and mineral lessees. The act of 1873 is, therefore, clearly within the purview of the later act. But it is not cut down by the repealing clause of the act of 1882, unless it is inconsistent with that act as well as within its purview. How can it be otherwise than inconsistent? It prescribes a limitation of three years, and the later act gives ten years, in which to bring the action.

It is urged that this is a special act and is not repealed by a later general act, revising the statutes, relating to the general subject, as no reference is made to it in the revising statute. In Sutherland Con. Stat., sec. 157, it is said that, "When the legislator frames a statute in general terms or treats a subject in a general manner, it is not reasonable to suppose that he intends to abrogate particular legislation to the details of which he had previously given his attention, applicable only to a part of the same subject, unless the general act shows a plain intention to do so." This is law in this State. *Railroad Co.* v. *Hoard,* 16 W. Va. 270. The argument to be made under it is that in 1873, the legislature introduced into the law of limitations an entirely new element by providing that a lessee in possession under an oil lease and having operated and expended money under it, might plead that fact in bar of an action againts him, and that, as the revising act of 1882, made no reference to this new subject, and special act, of limitations, the presumption is that it was not the intention of the legislature to repeal it. But this is only an answer to the claim that there has been a repeal by

implication only, See head note to sec. 157 Sutherland on Con. Stat. and the section itself. *Totten* v. *Nighbert,* 41 W. Va. 800. Here the appeal is express, not merely implied; and the repealing clause would sufficiently show the intention to repeal, if it did not actually repeal.

The decree under which Jacob S. Tennant purchased being erroneous, and he being a party to the suit moving the sale at which he purchased, his title as such purchaser is not protected by section 8 of chapter 132 of the Code. *Martin* v. *Smith,* 25 W. Va. 585; *Dunfee* v. *Childs,* 45 W. Va. 155; *Buchanan* v. *Clark,* 10 Grat. 164; *Galpin* v. *Page,* 18 Wall, 350. When such failure of title results, the parties are to be placed in *stalu quo. Hull* v. *Hull,* 26 W. Va. 1; *Williamson* v. *Jones,* 43 W. Va. 562. For this the decree complained of here provides. It gives to the plaintiff his undivided one-twelfth of the land, and one-twelfth of all the value of the timber and oil taken from the land, on the theory of the commission of waste by his cotenants, and allows the South Penn Oil Company to set off against the oil taken by it one-twelfth of the cost of the production of all the oil produced on the premises. The principle announced in the similar case of *Williamson* v. *Jones,* cited, has thus been applied.

The dismissal of the suit as to the defendant, Cassie A. Tennant, is assigned as error, but without any argument in support of it. No reason is perceived why that was not proper. Jacob S. and Cassie A. Tennant must be treated as wrong doers, each liable to the plaintiff for the whole amount of the damage wrought by them. Their extraction of the oil from the land, under the rule declared in *Williamson* v. *Jones,* makes them guilty of waste which is in the nature of a trespass. As each is liable to their cotenant for the full amount of the damage done by them jointly, he could sue them jointly or separately, and having sued both, he might dismiss as to one. The purchaser's title falls with the reversal and makes him a wrongdoer from the beginning. Why there was a dismissal as to Cassie A. Tennant does not appear, but if the plaintiff compromised with or released her, such action is no bar to the suit against Jacob S. Tennant, her joint trespasser. Code, chapter 136, section 7. That she, jointly with Jacob S. Tennant, executed the oil lease, is referred to in the suggestion of error in this connection, but nothing is said as to why, or how, that

affects the question of the propriety of the decree. The plaintiff was not a party to the lease, nor in any way interested in the rights or liabilities created by it between the lessors and lessee, nor in the settlement of any equities among them, that may grow out of the failure of title. But supposing Jacob S. Tennant not to be a wrong-doer, in as much as he entered under a voidable title, there is no reason why Cassie A. Tennant should be joined. She did not take or claim anything under the decree. Jacob alone purchased under it. It made no partition, giving her claim of right to separate possession of any part of the land. Jacob purchased Stewart's interest and leased it and took the royalty on it.

Although neither Jacob S. Tennant nor the South Penn Oil Company asked in their answers for the dower interest in plaintiff's one-twelfth of the oil, each predicates an assignment of error on the failure of the court to so provide in the decree. This seems, however, to be well taken. The bill shows on its face that they hold the dower interest, thereby admitting that the plaintiff is not entitled to it, and yet the decree gives it to him. That interest, as settled by the decisions of this Court, is the interest on the fund constituting the subject of the life estate, to be paid until the expiration of the life tenancy. That in this case, would be the one-third of the one-twelfth of all the oil produced, less the cost of production. As to who shall have the custody of this fund, during the life estate, under the circumstances of this case, there is no precedent, but the principles enunciated in *Wilson* v. *Youst,* 43 W. Va. 826; *Ammons* v. *Ammons,* 50 W. Va. 390, and *Eakin* v. *Hawkins,* decided at the fall special term, 1902, afford a sufficient guide. The plaintiff is not entitled to the *corpus* of the fund until the expiration of the life tenancy, and the life tenant is not entitled to it at any time, but is entitled to the interest on it. It has been virtually brought into court and there is no person to whom the court can order it paid. Of all the funds in court, subject to its order, and which cannot be disposed of for the time being, or *pendente lite,* the law provides a custodian in the person of the general receiver of the court, who is authorized by the statute to keep it invested and collect the interest. In giving to the plaintiff the entire one-twelfth interest, without providing

as aforesaid, for the dower interest, belonging to the appellants, the circuit court plainly erred.

In the conference it has been suggested that this case is to be distinguished from those of *Wilson* v. *Youst, Ammons* v. *Ammons,* and *Eakin* v. *Hawkins,* upon the ground that here dower has not been assigned, in consequence of which, there has been no invasion by the heir of the widow's right to possession while, in the other cases, the life tenant had right of possession against the remainderman. In making this distinction, oil and gas are likened unto timber taken from the land by the heir. But it must be remembered that oil differs widely from timber, and that the widow has always had the right to dower in mines opened by the husband in his life time, and she might work an open mine to the full extent of the stratum in which the opening was made, and by some courts, it has been held that she may work a mine to exhaustion. 10 Am. & Eng. Enc. Law (2d ed.), 158. Petroleum oil is comparatively a new subject in the law, as well as a substance peculiar in its nature, and both of these features must be considered and, if necessary to do justice and right, the law governing relative rights of dowress and heir may be varied to some extent. "The law of waste, in its application here, must be varied and accommodated to the circumstances of our new and unsettled country." *Findley* v. *Smith,* 6 Munf. 134. In that case it was so varied as to allow the dowress to use large amounts of timber, necessary to the operating of salt furnaces. Judge Roane dissented, but not from this proposition for he said, "The claims of the remainder-man and particular tenant should both be attended to, and be adjusted by a scale which consults the interests of both. The latter should be permitted to receive the golden egg, but not to destroy the goose which lay it." In *Lenfers* v. *Henke,* 73 Ill. 405, the court said of the dowress, "As we have seen, it is not waste in her to work mines opened by her husband, and, by a parity of reasoning, we reach the conclusion, it is not waste for her to work mines opened by the heir before assignment of dower. At all events, she would be entitled to dower in the profits in case the mines should be worked by the heir or owner of the fee, before assignment of dower." The same reasoning applies here. The statute gives her the right to demand of the heir one-third of the rents, issues and profits,

until her dower is assigned, and this Court has decided that such rents, issues and profits arising from oil is measured by the interest on the fund arising from its production, called royalty. *Wilson* v. *Youst,* 43 W. Va. 826. Here we must further consider the fact that Jacob S. Tennant had purchased the interests of heirs and the dower right, and under these claims of title caused the mines to be opened. Except as to the outstanding interest of the plaintiff, he did this rightfully, being in possession under the dower right as well as reversioner. As to future production, there can be no question about the right of the assignees of the dowress to share in its profits. As to that, the heir now here demands partition which he cannot have without assigning the dower, and thereby doing away with the technical distinction, resting on want of right of possession. This shows the technical and unsubstantial character of the distinction, which should yield to the plain dictates of equity and justice:

It is argued against this decree that it has been set aside for cause non-existent at the time the sale which it sets aside was made. When the question is whether the infant's interests were promoted by the sale it must be determined by the conditions and circumstances as they were when the sale was made, but if there is substantial error in the decree of sale, it will be reversed, without regard to whether, at the time of sale, it appeared to be beneficial to the infant. Error is cause of reversal existing at the time. The cases cited by counsel for Jacob S. Tennant are to this effect. *Walker* v. *Page,* 21 Grat 636; *Zirkle* v. *McCue,* 26 Grat. 517. In point 7 of the syllabus of the latter it is held that the "Matter for enquiry is, did the court have jurisdiction of the subject matter? Were the proper parties before it? Were the proceedings regular? Was the sale proper under all the circumstances then surrounding the parties?"

A further objection to the bill and decree is that the purchase money of the plaintiff's interest paid by Jacob S. Tennant is not tendered by the bill, nor required to be paid by the decree as a condition precedent to the setting aside of the sale. It is a general rule that a party who seeks equitable relief must offer in his bill to do equity, and this case is no exception to that rule. Had the land been sold to satisfy a lien, the purchaser

would be entitled to stand in the place of the lien creditor and have the benefit of the lien to the extent of his purchase money paid on the debt thereby secured. As we have seen the parties are to be put in *statu quo* on setting aside a judicial sale as the result of the reversal of a decree. See 21 Ency. Pl. & Pr., 548; *Hull* v. *Hull,* 26 W. Va. 1; *Charleston L. & M. Co.* v. *Brockmcyer,* 23 W. Va. 635. When the defendant is equitably entitled to be reimbursed for anything paid by him, there should be an offer to do equity in a bill to remove a cloud or quiet a title. 17 Ency. Pl. & Pr., 343. Here the bill itself shows that Jacob S. Tennant paid the purchase money, and that puts upon the plaintiff the duty of tendering it, or offering to pay it. Hence, the demurrer should have been sustained, and, though it was not, the decree should have required its repayment, as a condition precedent to the cancellation of the deed.

For the errors specified herein, the second decree, entered on the 29th day of August, 1901, must be reversed, the demurrer to the bill sustained, and the cause remanded, with leave to the plaintiff to amend his bill and then to be proceeded in according to the principles herein announced and, further, according to the rules and principles governing courts of equity.

*Reversed and Remanded.*

BRANNON, JUDGE, (*concurring*):

In the above strong opinion by JUDGE POFFENBARGER I fully agree, except in one matter. In that I do not see my way at present to concur, and write this note to reserve the question, if it should ever hereafter be reconsidered. This matter is the position that a widow has an interest in oil taken from land, for the first time, by the heir before assignment of dower. Oil is a part of the very soil, real estate, and its unlawful extraction is waste or irreparable injury. It is old law that a widow has no vested estate in even the surface until dower actually assigned. Cases cited in *George* v. *Hess,* 48 W. Va. p. 535; Ballard, Real Prop., sec. 106, 108; *McMahon* v. *Gray,* 15 Am. St. R. 202; *Carnell* v. *Wilson,* 76 Am. Dec. 351. It is otherwise with curtesy, as that vests as a present estate before the wife's death, except in separate estate, though to be enjoyed only after her death. *Wyatt* v. *Smith,* 25 W. Va. p. 816. Even after

dower assigned, though the widow could keep the heir from developing oil on dower land, yet she could not herself take oil from it, for the life tenant commits enjoinable waste, if he does so. 2 Am. & Eng. Dec. in Eq. 660, note 7, p. 671; *Williamson* v. *Jones,* 39 W. Va. 231; *Same* v. *Same, 43 Id.* 562, (64 Am. St. R. 891); 4 Am. & Eng. Dec. in Eq. 222; *University* v. *Tucker,* 31 W. Va. 622. In the *Williamson-Jones Case* last cited it is held that a life tenant may work oil wells opened before the beginning of the life estate, but cannot open wells for the first time. Such has been held generally to be the law. *Crouch* v. *Puryear,* 1 Rand 253; *Koen* v. *Bartlett,* 41 W. Va. 559; 56 Am. St. R. 884; *Marshall* v. *Mellon,* 179 Pa. St. 371, (57 Am. St. R. 601). These cases squarely hold that a life tenant cannot open new mines. But when, after the life estate begins, the mine or well is opened by the remainder-man or reversioner, it is by many cases regarded as an "open mine" at the beginning of the life estate, and the life tenant has, during life, the income of the output, that is, interest on its value; the principal going to the remainder-man or the reversioner on the cessation of the life estate. *Koen* v. *Bartlett,* cited; *Wilson* v. *Youst, 43* W. Va. 826; *Ammons* v. *Ammons, 50 Id.* 390; *Eakin* v. *Hawkins, 48 Id.* 364. Though this rule as to life tenants is well settled of late, the reason is not very apparent. Why cannot a life tenant mine? Because he has no interest in the minerals. Then, how does he become entitled to an interest in the output? In *Blakely* v. *Marshall,* 174 Pa. St. 425, it is stated that a lease of oil is a sale of part of the land, and therefore the life tenant should have the interest. But how can this be when nothing belonging to him has been sold? In *Koen* v. *Bartlett,* cited, JUDGE HOLT says that the life tenant holds possession to the center of the earth, and if the oil is lawfully severed, he ought to get its interest. JUDGE ENGLISH in the *Wilson-Youst Case* gives a better reason in saying that the life tenant could prevent anyone from boring for oil, and therefore should have interest on the product. Whatever the reason, this is established law as to life tenants having a vested estate in possession; but how does that apply to a widow before the assignment of dower? After assignment she would be like other life tenants. Whilst I think that my position as to dower right is in accord with old law, I see that there is a tendency of late

to veer away from it. Take the case of *Seager* v. *Seager,* 16 L. R. A. 247. After saying that old law settles that a dowress cannot open mines, yet holds that she is entitled to interest on iron ore taken from land, worthless for other purposes and not yielding anything for her support, though the mines were opened after her husband's death. So in *Lenfers* v. *Henke,* 73 Ill. 405 (24 Am. Dec. 263), it is held that "a widow is entitled to dower in mines opened and worked by her husband or by the heirs before dower is assigned." By Code, chapter 65, section 8, the widow may hold the mansion and curtilage until assignment of dower, and in the mean time may demand of the heir "one-third of the issues and profits of the other land." I do not see that this gives her profits to which she would not be entitled after assignment of dower. Does it intend to enlarge her rights or only to give equivalent? After assignment she could only get an interest in oil from wells on her dower land, not from the whole tract. Does not the statute mean only agricultural issues and profits?

### ON PETITION FOR RE-HEARING.

POFFENBARGER, JUDGE:

Complaint is made in the petition for rehearing that no authority is cited for holding that the title of the purchaser in this case falls with the reversal of the decree, notwithstanding section 8, chapter 132 of the Code. It is so well settled and has been so often decided that citation of authority was thought to be useless. See *Martin* v. *Smith,* 25 W. Va. 579; *Buchanan* v. *Clark,* 10 Grat. 164; *Dunfee* v. *Childs,* 45 W. Va. 155; *Gilpin* v. *Page,* 18 Wall. 374; Bar. Chy. Pr. 1095; Dan. Chy. Pr. 1276. Jacob S. Tennant was the mover of the sale at which he purchased. At his instance the decree of partition was set aside and the decree of sale made. He, more than anybody else, was interested and benefited by these proceedings. Owning six-twenty-fourts of the land, he joined in bringing the suit. Having acquired an additional eight-twenty-fourths, he procured a sale, instead of partition, to be made, and purchased the interest sold, still being a party to the suit. He is clearly excepted from the saving made by the statute.